E. G. and S. C. GREENE *vs.* McDONALD, BURTON and SOWLES.

January Term, 1897.

Present:  ROSS, C. J., TAFT, ROWELL, TYLER and MUNSON, JJ.

*Mechanic's Lien—Subrogation.*

A mechanic's lien can exist only when the work was done under a contract with one who owned some interest, legal or equitable, in the property, and attaches only to such interest.  If the contract is made with an agent the right to a lien depends upon the scope of the agency.

In the case at bar there could be no lien as against the interest of the defendants Burton and Sowles, because McDonald, although their general agent to carry on a manufacturing business in the building, had no special authority to charge their interest, and derived none from the fact that they knew such repairs would be required to fit the building for the purposes of the business and would enure to their benefit.

But the defendants Burton and Sowles having agreed with McDonald to pay his debt for such repairs, and taken a chattel mortgage as security therefor, the orators may be entitled to relief by availing themselves of McDonald's right under this arrangement, and the cause is remanded that amendments may be made to that end.

BILL IN CHANCERY to foreclose a mechanic's lien or have the orators' claim declared a charge.  Heard upon the pleadings and a master's report at the September Term, 1896, Franklin County.  A *pro-forma* decree was entered dismissing the bill.  The orators appealed.

*Wilson & Hall* for the orators.

*Farrington & Post* for Burton's estate.

*E. O. Sowles, pro se.*

MUNSON, J.  In January, 1881, certain sums were subscribed by different persons for the purpose of purchasing the Tremont House premises, and giving suitable title thereto to James McDonald, Jr., doing business under the name of The Glens Falls Shirt Company; which subscriptions were upon condition that Oscar A. Burton, E.

A. Sowles, and his wife Margaret B. Sowles, should convey the property to George W. Foster, trustee for said McDonald, pending the fulfillment of certain conditions imposed upon the said McDonald and recited in the subscription agreement; such agreement also providing that in case of default by said McDonald certain shares of the property should be conveyed by the trustee to Burton and Sowles, and the remainder to the subscribers thereto.

On the fifth day of February, 1881, and in pursuance of such subscription agreement, the premises were conveyed to George W. Foster in trust, to permit said McDonald, doing business under the name of the Glens Falls Shirt Company and his assigns, to occupy and use the same in the manufacture of shirts for five years, and at the expiration of that period to convey the same, discharged of said trust, to said McDonald, his heirs or assigns, provided the said McDonald had during said period fulfilled the requirements therein specified.

On the same day an agreement, executed as of January 12, was entered into between Burton, Sowles and Foster of the one part, and McDonald of the other part, by which the parties of the first part agreed to advance to McDonald from time to time, as it might be needed, a line of loans to be used in and about the repairs and alterations of the building, and the purchase and putting in of machinery, and in carrying on the manufacture and sale of shirts; said McDonald therein binding himself in substance as set forth in the proviso of the trust deed.

Afterwards, by an agreement executed June 30, 1881, and antedated February 15, 1881, Burton and Sowles agreed to stock the factory, and McDonald to superintend the business, drawing out not exceeding $100 a month, the balance remaining after paying expenses and liquidating an indebtedness to Burton and Sowles, to be paid to Gertrude E. McDonald at the end of five years; in which agreement it was further stipulated that the party of the first part might

put in a clerk or cashier to be paid out of the business, who should keep the books and disburse moneys, and keep an oversight of the business on behalf of such party. The obligation of Burton and Sowles is set forth in the language of the agreement in the statement of the case.

On said June 30, 1881, McDonald executed to Burton and Sowles a mortgage of certain personal property, conditioned for the payment of $3,412.30, advanced to said McDonald by the grantees, and "the further sum of not exceeding $6,587.70, which the said Sowles and Burton have obligated themselves to pay or assumed for said McDonald, or shall hereafter pay or assume for said McDonald, . . necessary expenses in the fulfillment of such occupations." The deed contains no recital explanatory of the last preceding clause. The master finds that the $699.65 claimed by the orators "was included in and was a part of the $6,587.70," above mentioned. It appears by a further finding that $252.97 of the amount claimed by the orators was for labor and material furnished after June 30, 1881.

The defendant McDonald took possession of the real estate on or about February 15, 1881, and on the 17th of that month began to purchase material and obtain work from the orators for the purpose of making certain repairs and alterations on the building which were necessary to fit it for the manufacture of shirts, and continued to obtain labor and material from them for that purpose until August 19, 1881. At the time of the making of the contracts and the execution of the trust deed above set forth, the defendants Burton and Sowles knew that certain alterations and repairs would be necessary to fit the building for the work required by the conditions of such writings. It appears that after the paper of February 5, 1881, was executed, Burton, Sowles and Foster provided a fund of $1000, which was mostly paid out on the orders of McDonald; and that after June 30, 1881, Burton and Sowles carried a loan of $15,000 on account of money used in the shirt factory business, and furnished such money as was used in providing

material and supplies for the business. The master finds that the business of the Glens Falls Shirt Company, so called, from February 15, 1881, until after January 1, 1882, was the business of the defendants Burton and Sowles, and under their management and control; and that McDonald superintended the business in their behalf, and had such contingent interest in it as may be shown by the agreement executed June 30, 1881.

On the 20th day of August, 1881, the orators filed a mechanic's lien on this property against Burton, Sowles and McDonald. On the 29th of September, 1881, they filed another lien on the property against McDonald alone. On the 14th of November 1881 they brought suit against Burton, Sowles and McDonald to recover the sum claimed in the lien so filed, and attached said real estate therein; in which proceeding a non-suit was entered as to Burton and Sowles and a judgment taken against the defendant McDonald, a certified copy of which was duly recorded in the town clerk's office. This proceeding is brought to foreclose these mechanics' liens, or to have the amount of the orators' claim decreed to be a lien upon the property.

A mechanic's lien can be had only when the work was done under a contract with one who owned some interest in the property, and the lien will attach only to the interest so owned. See *Kenny* v. *Gage*, 33 Vt. 302; *Iron Co.* v *James*, 51 Vt. 240. The interest may be either legal or equitable. If the interest be equitable, the rights of the lienor will be subject to those of the legal owner. When the owner of a vacant lot agrees to convey it at a future date and to loan the vendee money to erect buildings upon it in the meantime, those who furnish labor or material to the vendee must look to his interest in the property for security, and cannot reach the vendor's title without full payment of the purchase money. 61 Am. Dec. 688, note. The mechanic cannot hold any greater interest in the property than his employer had at the time the work was done. He is bound at his peril to know what that interest is. 45 Am. Dec. 679, note. If the

contract is made with an agent, the right to a lien will depend upon the scope of the agency. A mere general agency will not enable one to charge the land of his principal. A general authorization to take care of the property will not be sufficient. See *Baxter* v. *Hutchings*, 49 Ill. 119. A lessee cannot bind the demised property against the lessor's title without his consent. The owner is not bound by the mere fact that the repairs are for the permanent improvement of his property, nor that the work was done under his supervision, nor that he paid some of the bills contracted for the repairs, nor that he extended the lease and advanced money on condition that the tenant would make certain improvements, nor that the tenant was required by a covenant in the lease to make the repairs. 61 Am. Dec. 698, note.

The repairs in controversy were in fact ordered by McDonald. The question arises, whether they were ordered by him as the equitable owner of the realty, or as the agent of Burton and Sowles, owners of an equitable interest in the realty contingent upon McDonald's default. It is evident from the authorities before cited that the master's findings that the business of The Glens Falls Shirt Company after February 15, 1881, was the business of Burton and Sowles, and that McDonald was their superintendent, are not controlling. There is no finding that McDonald was authorized to charge the interest of Burton and Sowles with these repairs, and it cannot be considered that he had such an authority unless it legitimately appears from the facts reported. Clearly, it cannot be deduced from the fact that Burton and Sowles knew that such repairs would be required to fit the building for the manufacture of shirts, nor from the fact that the improvements would enure to the benefit of whatever interest they might have in the property. We see no ground upon which equity can assist the orators, unless it be found in the chattel mortgage of June 30, 1881. But it is certain that a previous authorization or subsequent confirmation of McDonald's authority

as agent to charge Burton and Sowles's interest in the realty with these repairs, cannot be found in this writing; for it undertakes to secure the grantees for assuming certain obligations resting upon McDonald. If the orators can derive any benefit from it, it must be upon the ground of general equitable relief, and not as supporting the mechanic's lien.

The mortgage secured $6,587.70 which the grantees had assumed or might thereafter assume for McDonald. The master finds that the orators' claim was included in that amount. A part of the claim had not accrued at the date of the mortgage, but under this finding it must be held that the arrangement contemplated the payment of their entire bill when ascertained. So the finding puts the orators' claim upon the footing of the claims already assumed. It appears then that Burton and Sowles agreed with McDonald to pay his debt to the orators, and received a mortgage from McDonald securing the amount to be paid. In equity the orators can avail themselves of the rights accruing to McDonald under this arrangement. See *Wells* v. *Tucker*, 57 Vt. 223; *Davis* v. *Hulett*, 58 Vt. 90; *Keyes* v. *Allen*, 65 Vt. 667. The report shows that the orators are entitled to relief in the line indicated, and the situation may be such that they would derive some benefit from a decree. So the bill will not be dismissed, but will be remanded to afford an opportunity for such amendments as may enable the orators to avail themselves of the case found.

> *Decree reversed, and cause remanded with mandate that the orators have leave to so amend the statements and prayer of the bill as to entitle them to relief against the defendants, Burton and Sowles, on the ground of obligations resting upon them as grantees in the chattel mortgage set forth in the master's report. Costs of amendment to be determined by the chancellor.*