[No. 5801. Decided March 22, 1906.]

MOON BROTHERS CARRIAGE COMPANY, *Respondent,* v. O. G. DEVENISH *et al., Defendants,* E. E. PLOUGH, *Appellant.*[1]

PARTNERSHIP — NOTE OF SUCCESSOR FOR FIRM DEBT — PAYMENT. The acceptance by a creditor of a firm of the individual note of one of the partners, after a dissolution, will not operate as a payment of the pre-existing debt, or discharge the other partner, where it was not agreed or intended to have that effect.

PRINCIPAL AND AGENT—TRAVELING SALESMAN—NOTICE—AUTHORITY AS TO COLLECTIONS. Notice to a traveling salesman, the agent of a creditor, that a partnership had been dissolved, and that one of the partners had assumed payment of the firm debts, is not proof of notice to his principal, in the absence of evidence showing that he had authority over the collection of the account due his principal from the firm; since the scope of the authority of a traveling salesman does not extend to collections.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered June 9, 1905, upon findings in favor of the plaintiff after a trial on the merits before the court without a jury, in an action to recover for goods sold and delivered. Affirmed.

*Wm. T. Stoll,* and *B. B. Adams,* for appellant.

*Thomas Neill (W. H. Winfree,* of counsel), for respondent.

1Reported in 85 Pac. 17.

HADLEY, J.—This is an action to recover on account for goods sold and delivered. The complaint, in the usual form, alleges the amounts of sales and the balance due and unpaid. It is also alleged that the sales were made between the 1st day of July and the 4th day of December, 1902, and that the defendants were, during all that time and until the 3d day of February, 1903, copartners doing business under the firm name of Devenish Hardware Company. The defendant Plough answered separately, and admitted the existence of the partnership at the time the goods were sold and delivered; but alleged that, after the indebtedness was contracted, to wit, on January 28, 1903, defendants dissolved partnership and that, by an instrument in writing, the defendant Devenish assumed and agreed to pay all debts of the partnership including that held by the plaintiff, of which plaintiff had knowledge; that the plaintiff, without the knowledge or consent of defendant, accepted in payment of said indebtedness three promissory notes of the defendant Devenish, bearing date May 15, 1903, for specified amounts, and maturing respectively August 1st, September 1st, and October 20th, 1903. The reply denies that plaintiff had any knowledge of any agreement on the part of defendant Devenish to assume the debts of the partnership. It is also denied that the promissory notes were accepted in payment of the debt, and it is alleged that they were accepted merely as evidence of the indebtedness and of the agreement to extend the time of its payment. On the above issues the cause was tried by the court without a jury, and judgment was rendered against both defendants for the sum of $2,546.12 and costs. The defendant Plough has appealed.

It is assigned that the court erred in its sixth finding of fact. The finding was to the effect that, at the time the notes were given, respondent had no notice or knowledge of any agreement between the partners whereby Devenish had assumed the payment of the debts of the firm, but that it did have knowledge of the dissolution of the partnership. This

finding should be considered in connection with the seventh finding, upon which error is also assigned. That finding is, in substance, that the goods were sold by a traveling salesman of the name of Moore; that he had authority from respondent to fix the price and terms of sale; that in April, 1903, Moore applied to appellant at Spokane to sell said firm more goods on the part of respondent, at which time appellant informed Moore that he—appellant—was no longer a member of the firm, and that Devenish had assumed all the liabilities of the firm, including the debt owing to respondent; that this conversation was prior to the execution of the notes, but that Moore had no power to collect or settle accounts and had no authority over this account after making the sale; that Moore did not notify respondent of this conversation, or of any facts therein stated; that all the dealings between the parties concerning this account, after the goods were sold, were had directly with respondent.

The court also found in its fifth finding that the notes were given as the result of a request from Devenish, made on January 30, 1903, for an extension of time, at which time he advised respondent of the dissolution, but did not advise it that he had assumed the debts of the firm; that the notes were executed by Devenish under the firm name, and were taken to close the account, but were not accepted in payment of the indebtedness. It appears by the record that an exception was originally taken to the fifth finding, but by a stipulation filed, it is stated that it was the intention to except to the sixth and seventh findings and not to the fifth and seventh, as stated in the original exceptions. There is, therefore, no exception to the fifth finding, and no error is assigned thereon. By that finding it is an established fact in the case that the notes were not taken as a payment or discharge of the original indebtedness.

. "Where a creditor of a firm accepts for the amount of his claim the individual note of one of several partners, or of a

new firm formed on the retirement of one or more members of the original debtor firm, and thereupon surrenders his original evidence of debt, such transaction will discharge the other partners if it was intended to have that effect; otherwise they will remain liable." 22 Am. & Eng. Ency. Law (2d ed.), 184.

Note, also, the following, which is found at pages 555-8 of the same volume:

"According to the general doctrine a promissory note, though negotiable, given by a debtor to his creditor, does not operate as payment of a pre-existing indebtedness, in the absence of an agreement between the parties that it shall so operate, and an action may be still maintained on the original indebtedness. And the same is true with regard to a note given to the creditor by a part of several or joint debtors; or the note of a third person; or a note given on which both the debtor or a part of joint debtors and third persons are liable."

See, also, cases there cited in support of the above. The debt therefore remained as before, except that the time of payment was extended until the due dates of the notes. *Dellapiazza v. Foley,* 112 Cal. 380, 44 Pac. 727.

It is conceded by respondent that, if it had known at the time the notes were taken which extended the time of payment, that Devenish had agreed to pay the debt individually, then appellant would have been released from liability. It is conceded that the authorities hold that when a partner retires and the remaining partner assumes the firm debts, then the relation of principal and surety arises between them, the retiring partner sustaining the relation of surety to the remaining one. It is also conceded that a creditor of the firm, who knows of such agreement, is bound thereby, and that any act of the creditor having such knowledge which would release an ordinary surety, will release the retiring partner. This case therefore really turns upon the question whether the respondent had knowledge of any such agreement between the partners. The court has found that respondent had no such knowledge, and we think we should not be justified in disturbing the finding. The mere fact that Moore,

the traveling salesman, was told of the agreement between the partners at a time prior to the taking of the notes which extended the time of payment, does not establish that respondent itself was advised of it. The court found that Moore did not advise respondent of it. The burden was upon appellant to prove, by a preponderance of evidence, that respondent had such knowledge. There was no direct proof that Moore had authority over collection of the account. It cannot be presumed as a matter of law, from the mere fact that Moore was the traveling salesman who sold the goods, that the collection of the account was a matter that came within the scope of his authority and duties, and that his knowledge therefore became notice to respondent.

"The scope of a commercial traveler's authority is well defined, and as a general rule, extends only to the soliciting of orders for goods. . . . Third parties dealing with him are bound at their peril to ascertain his real powers; . . . In case of salesmen intrusted with possession of the property to be sold, it is well settled that there is an implied authority to receive payment. But where the agent is merely a drummer, not intrusted with possession of the property—one of the *indicia* of ownership—the great preponderance of authority denies such a power, in the absence of a controlling usage to the contrary." 6 Am. & Eng. Ency. Law (2d ed.), pages 224-6.

In *State ex rel. St. Joseph etc. R. Co. v. Commissioners etc.,* 10 Kan. 569, Justice Brewer, in speaking of the scope of agency, said:

"Authority from a principal to an agent to do a specified act is limited to that act, and does not empower the agent to bind his principal to an act securing essentially different rights and imposing essentially different obligations."

The supreme court of Minnesota discussed this subject in *Trentor v. Pothen,* 46 Minn. 298, 49 N. W. 129, 24 Am. St. 225, and said:

"The rule which imputes to the principal the knowledge possessed by the agent applies only to cases where the knowledge is possessed by an agent within the scope of whose au-

thority the subject-matter lies; in other words, the knowledge or notice must come to an agent who has authority to deal in reference to those matters which the knowledge or notice affects. The facts of which the agent had notice must be within the scope of the agency, so that it becomes his duty to act upon them or communicate them to his principal."

Having in view the above legal principles, and also the testimony as introduced, we think the evidence supports the court's findings, and that the judgment rendered was proper under the findings. It is therefore affirmed.

MOUNT, C. J., FULLERTON, ROOT, CROW, and DUNBAR, JJ., concur.