[Civ. No. 4195. Second Appellate District, Division Two.—August 3, 1923.]

WALTER A. MAYR, Respondent, v. HERMAN H. GOLDSCHMIDT et al., Appellants.

[1] PARTNERSHIP — PROMISSORY NOTES—EXECUTION OF GUARANTIES— USE OF MONEY — PARTNERSHIP BUSINESS—FINDING—EVIDENCE.— In this action upon two guaranties executed by a member of a partnership upon two promissory notes payable to the partnership, a finding that a certain land project, in the development of which moneys derived from said notes were used, was included in the partnership business, was supported by the evidence.

[2] ID.—GUARANTY — AUTHORITY OF PARTNER TO EXECUTE — GENERAL RULE.—As a general rule, a partner has not authority upon a mere showing of the existence of the partnership, to bind his copartner upon a contract of guaranty, and this upon the ground that "The normal partnership is organized to carry on a business for its members, and not to assist other persons by becoming surety for them, or answerable for their debts."

[3] ID.—AUTHORITY OF PARTNER TO EXECUTE GUARANTIES—FINDING— EVIDENCE.—In such an action, there was sufficient evidence to show that the member of the partnership who signed the guaranties in question had express authority to execute the same in the name of the partnership.

[4] ID.—EVIDENCE — IDENTIFICATION OF PARTNER THROUGH IDENTITY OF VOICE—ADMISSIBILITY OF TELEPHONE CONVERSATION.—In such an action, an objection to the testimony of the plaintiff to the effect that when he had a personal conversation with the member of the partnership who did not sign the guaranties in question he recognized such member, by reason of having the same voice, as the one with whom he had had a previous conversation over the telephone in which he was assured that the guaranty on one of the notes was that of the partnership, goes to the weight of the evidence, not to its admissibility.

[5] ID.—AUTHORITY TO BIND PARTNERSHIP—BURDEN OF PROOF.—In such an action, the contention that the trial court erred in enter-

taining the view that the burden of proof was on the defendants to show that the member who signed the guaranties was without authority to bind the partnership by the two guaranties cannot be sustained, where the record discloses that there was no ruling of the court upon the question.

[6] NONSUIT—ORDER DENYING—EVIDENCE.—An order denying a motion for a nonsuit will not be disturbed, although the evidence at the close of plaintiff's case was so weak that it might properly have been granted, if, upon the trial, the defect is overcome by evidence subsequently introduced. If, upon the conclusion of the whole case, there is evidence upon the material issues warranting the submission of the cause to the jury, the question of whether the court erred in denying a nonsuit becomes of no consequence.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ernest C. Griffith, Loewenthal, Loeb & Walker and Loewenthal, Collins & Loewenthal for Appellants.

Norman A. Bailie and Turner & Grainger for Respondent.

WORKS, J.—This action was brought to recover upon two guaranties. One Milton Kauffman executed two promissory notes payable to Goldschmidt Brothers, a copartnership composed of Herman and Max Goldschmidt. Upon the execution of the notes Max Goldschmidt wrote on the reverse side of each of them the guaranty which is the basis of the action. He signed each of the guaranties, "Goldschmidt Bros., by M. Goldschmidt." The notes were by Kauffman, to whom they were handed by Max Goldschmidt, then taken to plaintiff, a money lender, who paid over to Kauffman the amount of the principal of the two pieces of paper and kept them. The money was used in the development of a land project known as Valencia Groves. The notes not having been paid at maturity the present suit resulted. The defense made by Herman Goldschmidt and by the copartnership, which had at the time of the trial been dissolved, was that Max Goldschmidt had no authority to execute the guaranties in the name of the firm. Plaintiff had judgment and Herman Goldschmidt and the copartnership appeal.

At the time of the transactions which are involved in the action the copartnership was engaged, principally at least, in the liquor business, but the trial court found that the Valencia Groves venture was also included in the partnership business. [1] This finding is assailed as having no support in the evidence. In the record there is some showing of the following facts: Herman and Max Goldschmidt together frequently became interested in business ventures and transactions apart from what was evidently the original purpose of the partnership, the operation of a winery and distillery. One of these was the purchase and subsequent sale of a tract of land known as Baldwin Park, in which Kauffman was also interested. Herman Goldschmidt himself testified: "The first Baldwin Park property was purchased when I was going to Europe in 1911. I did not have any conversation about that time with Mr. Kauffman as to how that property should be handled. I told him, 'I am going to Europe and you can take it up with my brother.' The profits were to be divided; myself and Max were to get a half. Goldschmidt Brothers advanced considerable money on the Baldwin Park property. . . . I told Mr. Kauffman that I was willing to go into it, and that was all. . . . I didn't know how the proposition was going to be handled, and I didn't care." A part of the testimony of Kauffman follows (he is speaking of Baldwin Park): "Father and I furnished some of the money to buy it, Goldschmidt Brothers furnished the balance. I had conversations with Herman Goldschmidt in regard to this Baldwin Park property. I spoke to him many times before and after I purchased the land. . . . We were to divide the money equally on the profits. . . . Goldschmidt Brothers furnished four or five thousand dollars. My father and I furnished possibly the same amount. . . . We sold the property and with the money paid off the different obligations. Most of the money was in the shape of mortgages, payable at different times. As these mortgages were paid and the interest was paid on them, we put it in to the land which was afterwards turned into the Valencia Groves Company. After this Baldwin Park proposition was finally wound up and the proceeds of it were in money and mortgages, I discussed with Max and Herman Goldschmidt the entering into another real estate transaction being the portion of a tract of land south of

Covina. This tract of land was eventually called the Valencia Groves land.'' There was evidence also that moneys were advanced by ''Goldschmidt Brothers'' in connection with the Valencia Groves deal and that the amounts were evidenced by checks executed in the firm name. The same books of account which contained the entries relating to the liquor business of the firm also showed transactions concerning the Valencia Groves matter. Appellants contend that the strongest construction which can be placed upon the evidence is, not that the copartnership was interested in Valencia Groves, but that Herman and Max Goldschmidt participated in the venture as individuals. Specifically, it is insisted that the entries in the books as to the Valencia Groves transaction are to be regarded as relating only to the members of the firm as individuals and not to the copartnership itself. Appellants say that entries showing the issuance of checks by the firm in payment of tailoring bills of one of the members are not to be taken as evidence that the clothes purchased were the property of the partnership. While this latter view of appellants may be correct, that is not equivalent to an assertion that the entries in the books concerning the Valencia Groves transaction are not to be taken as *some* evidence that the venture mentioned was a partnership affair. Those entries are doubtless to be considered as evidence in that direction, although perhaps of slight weight, as the individual members of the firm often did make payment of their personal bills by means of partnership checks. There is in the record, however, as we have shown, considerable other evidence to be added to the showing made by the books. To the general proposition advanced by appellants, that the evidence shows without dispute that the two brothers had only individual interests in the Valencia Groves lands, we cannot assent. There was surely ample evidence justifying the trial court in drawing the inference that the venture was a part of the partnership business. There is matter in the record, in addition to that to which we have referred, furnishing support to the finding in question, but we have refrained from specifically pointing it out. The evidence which we have quoted is enough.

Taking it as settled, then, that the Valencia Groves deal was a partnership affair, did Max Goldschmidt have authority to sign the partnership name to the guaranties? This

question is answered in great part by what we have said above. **[2]** It is undoubtedly the general rule that a partner has not authority, upon a mere showing of the existence of the partnership, to bind his copartner upon a contract of guaranty, and this upon the ground that "The normal partnership is organized to carry on a business for its members, and not to assist other persons by becoming surety for them, or answerable for their debts" (30 Cyc. 515). Here, however, there appears to be no room for the application of the rule. If the situation already disclosed does not show that the present case is not within the reason of the rule, that fact will appear from additional circumstances to which we shall presently advert. We have already said that the money received from respondent was used to further the Valencia Groves affair. That circumstance alone indicates that the papers signed by Max Goldschmidt were not guaranties in the sense of the reason for the rule, but were only guaranties in form, employed for the purpose of borrowing money for use in the enterprise in furtherance of which Goldschmidt Brothers and Kauffman were together to furnish funds. That the transaction is to be so regarded is indicated by further evidence appearing in the record. Kauffman testified that after Goldschmidt Brothers had advanced large sums of money on the Valencia Groves enterprise Max Goldschmidt told him that they were not in a position to advance more money out of their own funds, "that he [Max] would have [*sic*] borrow money on the outside; make arrangements to finance, that is." The examination of the witness then proceeded: "Q. Did you ever discuss that matter with Herman? A. Yes. Q. What did Herman tell you? A. 'See my brother.' Q. Did you tell Herman that you would have to borrow money on the outside? A. Yes." When Kauffman, who had already made a call upon respondent about the business of the loan, came a second time with the first of· the two notes, the guaranty being upon it, respondent called the office of Goldschmidt Brothers over the telephone before paying over the money. This is respondent's testimony as to what then occurred: "Whether he [Kauffman] returned that day or the next I do not remember, but I took the note . . . and I telephoned—I rang up Goldschmidt Bros. and described the note and asked for the manager of Goldschmidt Bros. I asked for the

manager, and the party said, 'Just wait a minute'; and shortly—I waited a minute and someone else came to the phone. Q. . . . You had a conversation with that person on the phone? A. I did, sir. Q. Have you since that time ever had a conversation with Herman Goldschmidt? A. I have. Q. When? A. In your office. Q. When you had this conversation with Herman Goldschmidt in my office could you recognize the voice which you talked to over the telephone? . . . A. I did. Q. . . . Whose voice was it? A. I thought it was Herman Goldschmidt's. . . . Q. . . . Do you still think so? A. I do. . . . Q. . . . It is your best judgment that it was Herman Goldschmidt's voice? A. Yes, sir, I should say it was. Q. State the conversation. . . . [A.] I stated that Milton Kauffman was in the office with the note indorsed by them, and asked them if they had made the indorsement— Q. And he answered what? A. —whether it was the *bona fide* indorsement of Goldschmidt Brothers, the firm. And they said, 'Yes, that is all right; that is our indorsement and we stand back of the note.' And I said, 'To whom shall I give the check for it? Shall I mail it or give it to Mr. Kauffman?' He said, 'Just give it to Mr. Kauffman; that is all right.' '' (This conversation, it will be observed, related to the loan on the note first presented to respondent by Kauffman. The transaction on the second note came later.) [3] From all these circumstances we are bound to conclude that there is in the record sufficient evidence to show that Max Goldschmidt had express authority to execute the two guaranties in the name of Goldschmidt Brothers.

Appellants present several questions which fall to the ground with the conclusions we have reached upon the two points above discussed. There are, however, one or two matters which require a brief notice. It is contended that the trial court erred in receiving in evidence the telephone conversation which we have already set forth as detailed by respondent. The objection to the evidence is on the ground that it does not appear that respondent talked with any person in authority in the office of Goldschmidt Brothers. [4] It is insisted that respondent could not have recognized, from a later conversation with Herman Goldschmidt, that it was the voice of the latter which came to him over the telephone. This objection goes to the weight

of the evidence, not to its admissibility. The fact that respondent testified that it was Herman's voice which he heard over the wire made it compulsory upon the court to receive the evidence. The weight to be ascribed to the alleged conversation was a matter for the later consideration of the tribunal. In passing upon the question of the admissibility of this telephone conversation we have not overlooked the case of *Union Construction Co.* v. *Western Union Tel. Co.,* 163 Cal. 298 [125 Pac. 242].

[5] It is contended that the trial court erred in entertaining the view that the burden of proof was on the defendants to show that Max Goldschmidt was without authority to bind the partnership by the two guaranties. We employ the expression "entertaining the view" advisedly, for there was no ruling of the court upon the question, as there might have been if the cause had been tried by a jury and the judge had given an instruction upon the law regarding the burden of proof. The bill of exceptions shows certain expressions of the court upon the matter of the burden of proof, laying aside all question as to whether his utterance on the subject was properly included in the bill. What he said, however, was spoken in the course of his remarks in ruling upon a question of evidence and they did not amount to an order or ruling upon the question of the burden of proof. If we grant for the sake of argument that the judge was in error in his views, we have no means of knowing whether the error continued up to the time when he signed the findings and judgment in the cause. In such a condition of affairs we should assume, if it were necessary, that he became enlightened upon the subject before the cause was finally decided. Under the objection now before us we can see nothing to decide.

[6] The sole remaining point is that the court erred in denying a motion for nonsuit, but it does not follow that a reversal of a cause will result when a trial court denies a motion for nonsuit which it should have granted, not deciding that the motion should have been granted in the present instance. "It is well settled that an order denying a motion for a nonsuit will not be disturbed, although the evidence at the close of plaintiff's case was so weak that it might properly have been granted, if, upon the trial the defect is overcome by evidence subsequently introduced. If,

upon the conclusion of the whole case, there is evidence upon the material issues warranting the submission of the cause to the jury, the question of whether the court erred in denying a nonsuit becomes of no consequence" (*Peters* v. *Southern Pac. Co.*, 160 Cal. 48 [116 Pac. 400]). The facts of the present case bring it directly within the rule thus stated.

Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 31, 1923, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 28, 1923.