[Civ. No. 5463. First Appellate District, Division One.—August 9, 1927.]

F. A. LORENZ, Appellant, v. A. F. ROUSSEAU, Respondent.

(1)

Orville C. Pratt, Jr., and George F. Jones for Appellant.

Cullinan & Hickey and William T. Sweigert for Respondent.

CAMPBELL, J., *pro tem.*—Respondent A. F. Rousseau was the owner of certain premises on Market Street, in San Francisco. The Mother Goose Confection Company was the lessee in possession of the premises and had engaged appellant, F. A. Lorenz, to perform certain alterations and installation work. The work was performed by appellant but was never paid for by the Mother Goose Confection Company, which had in the meantime become insolvent. Appellant filed his claim of lien upon the premises and subsequently brought this action to foreclose the lien against respondent, the owner of the property. It is not contended that respondent had anything to do with the work, that he ever met the appellant contractor or that he had any personal knowledge of the work being done. It is, however, claimed that one George H. McCarthy had knowledge of the work being performed upon the premises and that McCarthy was such an agent of respondent Rousseau as to make the knowledge of McCarthy his knowledge.

Appellant urges that "the sole point involved is whether or not the respondent Rousseau, who owns the building on which appellant's work was admittedly done under a contract with a tenant in possession, had actual or constructive notice of such work during its progress. If he had, he should have filed a notice of nonresponsibility under section 1192 of the Code of Civil Procedure, or else he must suffer his interest in the building to be subjected to a lien for the value of appellant's work done thereon."

It would appear, however, from the record that there are two points involved instead of one, as suggested by appellant. One, did McCarthy himself have knowledge of the work being done? And the other, if McCarthy did have knowledge of the work, was he such an agent of respondent that knowledge by him would bind respondent? Obviously, the question of the agency of McCarthy is important only in so far as it assumes that McCarthy himself had knowledge. On this latter question there is a conflict in the evidence. Appellant testified that he saw McCarthy around the premises where he did the work at least a half dozen times. Mr. Holland, the tenant, a witness called on behalf of plaintiff, testified that McCarthy came to the premises two or three times while the work was in progress to collect

the rent, while McCarthy himself testified that he did not believe he went to the premises until the work was finished, that his first recollection of the place was that it was all finished up, that Mr. Holland called his attention to some fellow who was painting in the gallery, that he saw no work performed, excepting some painters painting ''Mother Goose'' rhymes.

This testimony of McCarthy that he had no knowledge of any work being done on the premises until ''it was all finished up'' and that the only work he saw being done then was the painting of some ''Mother Goose'' rhymes, even assuming McCarthy to be the agent of respondent Rousseau, is sufficient to sustain the finding of the trial court ''that at all the times herein mentioned the said defendant Rousseau had no knowledge and notice, or knowledge or notice of the making of said improvements, installations and repairs.''

The rule is well settled that when a finding is based upon a conflict in the evidence the appellate court will not disturb such finding on appeal. It is also well settled that findings must be so construed as to support rather than to defeat the judgment (*Breeze* v. *Brooks*, 97 Cal. 72 [22 L. R. A. 257, 31 Pac. 742] ; *Leist* v. *Dierssen*, 4 Cal. App. 634 [88 Pac. 812] ; *Vasey* v. *Campbell*, 4 Cal. App. 451 [88 Pac. 509]).

On the question of McCarthy's authority as an agent of respondent Rousseau the testimony of Rousseau may be summarized as follows: McCarthy was an independent real estate broker; Rousseau's building was vacant, and McCarthy received permission to put a sign on the building in question. The renting or leasing was an open proposition, Rousseau having no exclusive agent. Seeing the sign, Holland (the tenant) came to McCarthy about leasing the premises. McCarthy had no authority to lease or contract for Rousseau in any manner whatever. He did not have charge of the building. Even when taking a deposit from Holland he took it subject to the acceptance of Rousseau. He went to Rousseau, who prepared the lease. He took the lease to Holland for his signature. He then returned the lease to Rousseau for his signature. McCarthy was paid a commission for his services by Rousseau. Hol-

land went into possession. Subsequent to the closing of the lease the bookkeeper asked McCarthy to go over to the building and collect the rent. McCarthy was not a regular rent collecting agent. He went, however, to collect the rent only, and was unable to do that. He neither had nor pretended to have authority to do anything else with regard to the premises and had no authority to order or authorize any repairs or improvements. Rousseau was an extensive realty operator and had no exclusive agent. McCarthy was merely one of a number of brokers active in seeking tenants for his properties. At the time the building was leased to the Mother Goose Confection Company other signs than McCarthy's were put up—it is hard to say how many. Almost every large real estate business in town leased his property or had signs on it at different times. Coldwell, Cornwall & Banker had the most signs: Mr. McCarthy was long in the minority; Madison & Burke and Von Rhein and Center & Spader rented property for him.

Even if McCarthy did have knowledge of the work, this evidence is sufficient to sustain the conclusion that he was not such an agent of respondent Rousseau that knowledge by him would bind Rousseau.

To say that McCarthy, simply because he acted as a broker in leasing the particular premises, could afterwards bind Rousseau by knowledge gained on a subsequent visit to the premises to collect rent, is not tenable. If he could, so also could the numerous other agents who performed a like service for Rousseau. As to the point now discussed the question seems simply to be: Can knowledge of improvements being made on certain premises acquired by one who is merely requested to call and collect rent be imputed to the owner so as to bind the owner under the provisions of section 1192 of the Code of Civil Procedure? Both authority and reason answer that it cannot.

In *Weiboldt* v. *Best Brewing Co.*, 163 Ill. App. 246, the court says: ''The knowledge of an agent can be imputed to the principal only when it relates to facts within the scope of his agency (citing authorities). The only authority Haberer & Snow Company had to act for appellee was that given in the lease that was assigned to Westendorf, which was to receive the rents from Fabish, Kramer and Dumas up to the time they assigned their lease and after that from

their assignee, Westendorf. They had no authority to receive rents from anyone else or to consent to the change of the terms of the lease or to a substitution of tenants or occupants. Whatever knowledge they acquired, therefore, as to who were occupying the premises or how, to whom, or when the rents were being paid by the occupants other than Westendorf himself, was in relation to facts wholly outside of the scope of their authority as agents of appellee, and their knowledge of such matters cannot be imputed to him.''

In *Renton, Holmes & Co.* v. *Monnier*, 77 Cal. 449 [19 Pac. 820], the court held that notice to the owner's architect of the contractor's assignment of his claims for payment under his contract was not notice to the owner, the court saying: ''Agencies are general or special, and an agent has such authority as the principal actually or ostensibly confers upon him (Civ. Code, sec. 2315). In this case it is not claimed that the architect had any other authority than that expressly conferred upon him by the written contract for the construction of the building.''

It is elementary that the principal can only be charged with knowledge of the agent, when such knowledge is of matters pertaining to the particular transaction in which the agent is authorized to act (*Second National Bank* v. *Curren*, 36 Iowa, 555). ''Not being her agent in any manner connected with the purchase or payment of materials, the architect's knowledge, if any he had, that these were being obtained from plaintiff, was not chargeable to the owner.'' (*Chicago Lumber & Coal Co.* v. *Garmer*, 132 Iowa, 282 [109 N. W. 780].)

In the instant case it would be a departure from the established rule and do violence to the reason on which it is based to hold that knowledge of an ordinary rent collector that work is being done on certain premises is knowledge that is imputed to the owner and binding upon him under section 1192 of the Code of Civil Procedure. In order to bind the principal the fact or knowledge concerning such fact must arise from or be connected with the subject matter of the agency (*Renton, Holmes & Co.* v. *Monnier, supra*). Notice to an agent is not notice to the principal unless such knowledge is of a matter concerning which the agent has authority (*Alabama Western R. Co.* v. *Bush*, 182 Ala. 113

[62 South. 89] ; *Moon Bros. Carriage Co.* v. *Devenish,* 42 Wash. 415 [7 Ann. Cas. 649, 85 Pac. 17] ; *Strauch* v. *May,* 80 Minn. 343 [83 N. W. 156] ; *Daly* v. *Arkadelphia Milling Co.,* 126 Ark. 405 [189 S. W. 1053] ; *Green* v. *McDonald,* 70 Vt. 372 [40 Atl. 1035] ; *Missouri, K. & T. Ry. Co.* v. *Belcher,* 88 Tex. 549 [32 S. W. 518] ; *German Ins. Co.* v. *Goodfriend* (Ky.), 97 S. W. 1098; *Donham* v. *Hahn,* 127 Mo. 439 [30 S. W. 134] ; *Topliff* v. *Shadwell,* 68 Kan. 317 [74 Pac. 1120] ; *Collins & Toole* v. *Crews,* 3 Ga. App. 238 [59 S. E. 727] ; *Royle Min. Co.* v. *Fidelity Casualty Co.,* 161 Mo. App. 185 [142 S. W. 438].)

██ Counsel for appellant urges that it was "the duty of the court below to stretch rather than constrict the scope of McCarthy's agency when it was seeking to infer from his admitted functions what his authority, or lack of authority, might be to receive notice of improvements on respondent's behalf," and cites us to *Gentle* v. *Britton,* 158 Cal. 332 [111 Pac. 9] , *Harmon Lumber Co.* v. *Brown,* 165 Cal. 197 [131 Pac. 368] ; *Allen* v. *Wilson,* 178 Cal. 678 [174 Pac. 661], and *Western Well Works* v. *California Farms Co.,* 60 Cal. App. 756 [214 Pac. 491], in support of his contention. In our opinion the cases cited do not establish the principle contended for, but, on the contrary, *Allen* v. *Wilson* and *Gentle* v. *Britton,* referring specially to section 1192 of the Code of Civil Procedure, hold that this section is based upon the doctrine of estoppel, and it is well settled that estoppel is not favored and must clearly be proved (*Franklin Co.* v. *Merida,* 35 Cal. 558). Furthermore, the tendency of the law is not to extend the doctrine of imputed notice, but to keep it confined within narrow and necessary limits (*Whittenbrock* v. *Parker,* 102 Cal. 103 [41 Am. St. Rep. 172, 27 L. R. A. 197, 36 Pac. 374] ; *Trentor* v. *Pothen,* 46 Minn. 298 [24 Am. St. Rep. 225, 49 N. W. 129] ; *Hargadine* v. *Krug,* 2 Neb. (Unof.) 52 [96 N. W. 286]).

In the cases cited by appellant the facts are not the same as they are here. In *National Lumber Co.* v. *Whalley,* 162 Cal. 224 [121 Pac. 729], the question of the scope or extent of an agency was not involved. In *Pacific Lumber Co.* v. *Wilson,* 6 Cal. App. 561 [92 Pac. 654], the agent whose knowledge of improvements was held to bind the owner was an agent with general authority to look after the business

of the owner. In *Jefferson* v. *Leithauser*, 60 Minn. 251, [62 N. W. 277], the agent was an agent with authority to generally look after the particular property in question.

In our opinion there is no merit in the appeal. The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 3, 1927.