[Civ. No. 6276. Second Appellate District, Division Two.—April 21, 1930.]

HAMMOND LUMBER COMPANY (a Corporation), Appellant, v. W. S. WEEKS et al., Respondents.

R. L. Horton for Appellant.

Arthur Goodrick for Respondents.

CRAIG, Acting P. J.—The respondents were awarded judgment in an action of appellant against themselves and others; and this is an appeal therefrom.

One W. S. Weeks contracted with respondents for the erection of a house and garage upon their property in the county of Los Angeles, and purchased from the appellant lumber company certain sash, doors, hardware and materials for use in said structures. Respondents made and executed to Weeks a deed of trust in the sum of $1250 as security for the payment of any amount for which he might become indebted through such purchases, and the same was delivered to and held by appellant until completion of the work. Respondent J. Pludow, being informed that his account had been satisfied, and that one S. C. Briggs had purchased the deed of trust, was desirous of verifying this report and, to quote his testimony: He "called up Hammond Lumber Company on the telephone and told them I was Pludow, the owner of that house, and I wanted to know, because I am going to make another

payment to this contractor, if they are paid. They couldn't answer me right away on the 'phone. They told me they would connect me with the trust department, which they did. A girl answered the 'phone then and she asked me what I wanted, and I explained to her that I wanted to know as far as their bills are concerned, because I wanted to make another payment to Weeks. They held me on the 'phone for fifteen minutes, and then they came back and said, 'as far as we are concerned, we are all paid up; you can go ahead and pay Weeks whatever is necessary.' "

Prior to this conversation Briggs accompanied Weeks to appellant's offices, informed a bookkeeper that he was purchasing the deed of trust, and was advised that the balance due on the Pludow job was $825, which he paid; he had agreed to pay $1,050 for the security, and Weeks was therefore at the same time given a check for $225, whereupon appellant released it to the purchaser. Respondent, believing that appellant's claim had been paid in full, also delivered to Weeks a check for the remainder concededly earned by the latter.

Thereafter the Lumber Company filed a lien against the property in question for the sum of $208.64, and subsequently instituted the present suit for its foreclosure. Upon the trial it was strenuously asserted by appellant's witnesses that no member of its office force had received a telephone inquiry such as that to which respondent testified, or had given to any person the information stated. It appears that one Sherman, appellant's accountant, had visited the property and reported to his employer as to the completion of the work and the amount remaining due it, but it was testified that at the time of the settlement with Briggs and Weeks this report had not reached the proper department so as to be entered in the account, and that as a matter of fact the books did not at the time of such settlement show its true status. A Miss Quirk testified that she had full charge of appellant's trust or securities department, and that any inquiry as to the Weeks account would have come directly to her, but that she had received no call regarding the same; that under no circumstances would she have taken the responsibility of determining or giving information as to its condition, and that she did not do so; both this witness and Sherman swore

that Sherman was the only one who possessed or could have given the required data, and he positively testified that he received no inquiry and gave no report to Mr. Pludow at that time; that Briggs had merely paid the amount then on the books, leaving unsatisfied a hardwood floor estimate, the material for which had not been installed. Further, he swore: "When Mr. Weeks stated he had a buyer for the trust deed and had the man with him and he wanted to know how much he owed us up to that time, I went back to the bookkeeping department and showed him the ledger balance at that time. But on the job card, which I took out of the file when he came into the office, I observed down at the bottom that there was a hardwood floor that was to be put in on the job"; and that Weeks had said: "I will take care of that out of more money that I have coming from Pludow, coming from the contract, before the lien rights run by"; that the flooring was delivered on the same date as the conversation here recited. It also appears that thereafter, upon inquiry of the owner as to appellant's reason for filing its lien, Sherman informed him that they regretted the annoyance, but that Weeks had double-crossed them.

From the foregoing it appears that while Briggs paid the account as it then appeared, a subsequent amount representing additional material was thereafter added thereto, and that although respondent may have been informed by some unknown person that his account had been adjusted in full, such was not the fact, and he made no personal request of the proper parties or at appellant's office for a statement.  ▉  We think this evidence wholly insufficient to establish the fact of payment as to the balance claimed, and that authorities relied upon by respondents do not support their plea of estoppel upon the part of appellant to assert it. *Eastman* v. *Means,* 75 Cal. App. 537 [242 Pac. 1089], involved conversations between the appellant therein and several witnesses who testified, and which as corroborated were received in evidence. The court, however, there merely held this proof sufficient *prima facie* as to the identity of the appellant. Likewise, in *Swift* v. *Hollander,* 85 Cal. App. 535 [259 Pac. 958], it was said that the circumstances warranted admission in evidence of the conversation. No authority is cited, nor has a careful search disclosed one,

tending to approve a rule that one may upon no evidence other than a telephonic conversation with an unidentified party, and uncorroborated as to believed identity, legally sustain grounds for estoppel or release from liability.

That a release from any indebtedness was intended by appellant, or even asserted by respondents, is not urged. ■ Estoppel is not favored, and it is incumbent upon one who advances it to prove its dominant essentials, leaving nothing to surmise or questionable inference. (*Lorenz* v. *Rousseau*, 85 Cal. App. 1 [258 Pac. 690] ; *General Motors Accept. Corp.* v. *Gandy*, 200 Cal. 284 [253 Pac. 137].)

While doubt may exist as to the competency of a telephonic conversation, its admissibility may under the circumstances of a particular case be justified. (*Mayr* v. *Goldschmidt*, 63 Cal. App. 381 [218 Pac. 621].) ■ However, evidence as to a conversation over the telephone is in the main governed by rules applicable to ordinary oral statements. Testimony of one that he talked with another whom he did not see is, standing alone, but a conclusion, and when denied it falls far short of being sufficient to hold the person assumed responsible under an alleged agreement to forego substantial rights. (*Planters C. O. Co.* v. *Western Union Tel. Co.*, 126 Ga. 621 [6 L. R. A. (N. S.) 1180, 55 S. E. 495] ; *Stewart* v. *Fisher*, 18 Ga. App. 519 [89 S. E. 1052] ; *Barber* v. *City Drug Store*, 173 Iowa, 651 [155 N. W. 992] ; *Lord Elec. Co.* v. *Morrill*, 178 Mass. 304 [59 N. E. 807] ; *Mankes* v. *Fishman*, 165 App. Div. 789 [149 N. Y. Supp. 228] ; *Williamson-Halsell-Frasier Co.* v. *King*, 58 Okl. 120 [158 Pac. 1142].)

The argument upholding the judgment of the trial court on the theory of estoppel in favor of respondents has no support except in this alleged conversation on the telephone. Since there was no other conversation between the parties on the subject, applying the rule as above stated, that contention is eliminated. We think the evidence in this case was insufficient to bring respondents within the bounds of settled rules entitling them to relief.

The judgment is reversed.

Thompson (Ira F.), J., and Norton, J., *pro tem.*, concurred.