[No. 27684.   Department One.   April 22, 1940.]

ALASKA PACIFIC SALMON COMPANY, *Respondent-appellant,* v. M. K. MATTHEWSON, *Appellant,* S. M. ANDERSON, JR., *Respondent,* A. C. TEBB, *Defendant.*[1]

[1]Reported in 101 P. (2d) 606.

*Hayden, Merritt, Summers & Bucey* and *Ernest Falk,* for appellant Matthewson.

*Stedman & Stedman,* for respondent-appellant Alaska Pacific Salmon Company.

*McMicken, Rupp & Schweppe* and *Bernard Reiter,* for respondent Anderson.

Main, J.—This action was brought to recover the balance due on the purchase price of stock in a corporation, which had been sold by the plaintiff. The defendant A. C. Tebb did not appear in the action. The defendant S. M. Anderson, Jr., denied liability, and the defendant M. K. Matthewson denied liability and cross-complained for a judgment over against the other two defendants in the event that any judgment was rendered against him. The trial was to the court without a jury, and resulted in a default judgment against Tebb, a judgment of dismissal as to Anderson, and a judgment against Matthewson for the balance due on the stock, with a judgment over against Tebb. From this judgment, the plaintiff and Matthewson appealed.

The appellant Alaska Pacific Salmon Company (which will be referred to as the salmon company) is a corporation organized under the laws of the state of Nevada, authorized to do business in this state, with its principal place of business in the city of Seattle.

The appellant Matthewson did business in the same city under the name of the Matthewson Shipping Company. The salmon company owned all the capital stock of the Southland Steamship Company, a corporation, and this latter company owned a steamship known as the Forest King.

December 31, 1936, the salmon company entered into a contract with Matthewson, under the name of the Matthewson Shipping Company, by which the latter contracted to purchase from the salmon company all the capital stock of the Southland Steamship Company. The arrangement was that Matthewson, Anderson, and Tebb were each to have one-third of the stock purchased when it was fully paid for. October 21, 1937, Matthewson sold his interest in the stock to Tebb. This contract is signed in the name of Matthewson individually, and under his signature is a recital to the effect that Tebb agrees to fulfill the contract above mentioned. This declaration is signed by Tebb. Subsequently, the present action was brought by the salmon company to recover the balance due upon the stock from Matthewson, Anderson and Tebb.

Upon its appeal, the salmon company contends that it was entitled to a judgment against Anderson, as well as against Matthewson and Tebb. This contention is based upon the assumption that the three parties mentioned were partners in their ownership of the stock which they were purchasing. Without so deciding, it will be assumed, only for the purpose of this decision, that they were partners, and that they would be liable as such.

As already stated, the contract for the purchase was signed only by Matthewson Shipping Company. At that time, the court found, and the evidence shows, that the salmon company knew that Tebb and Ander-

son were financially interested with Matthewson in the purchase of the stock.

It is a well-known rule that, where a partnership business exists, each partner is a principal, as well as an agent. In other words, each partner is an agent of the other partners in the transaction of the partnership business. 47 C. J. 643; 1 Rowley, Modern Law of Partnership, 485, § 411.

Where, however, the partners are disclosed and known to a party contracting, and the contract is only signed by one of the partners, who contracts on his own behalf, the other partners are not bound thereby. 2 C. J. 836; *Chapman v. Ross,* 152 Wash. 262, 277 Pac. 854; 1 Mechem on Agency (2d ed.), 1048, § 1419. From what has been said, it follows that neither Tebb nor Anderson was obligated under the contract of purchase.

The question, then, arises whether Anderson was bound, along with Tebb, under the assignment from Matthewson to Tebb, to which Anderson was not a party. This agreement, on its face, purports to express the whole agreement between the parties thereto; and to hold Anderson liable thereon, it would be necessary to import terms into the obligation, by oral testimony, for the purpose of establishing liability as against him. To do so would be in violation of what is known as the parol evidence rule, which does not permit oral testimony where a contract is complete on its face and purports to express the entire agreement between the parties. *Thomson & Stacy Co. v. Evans, Coleman & Evans,* 100 Wash. 277, 170 Pac. 578; *McGregor v. First Farmers-Merchants Bank & Trust Co.,* 180 Wash. 440, 40 P. (2d) 144.

While one partner is the agent of the other in the transaction of the partnership business, this agency does not exist in a transaction by which one of the

partners purchases the interest of another. 1 Rowley, Modern Law of Partnership, 485, § 411; *Summerlot v. Hamilton*, 121 Ind. 87, 22 N. E. 973.

It is true, in this case, that both Anderson and Tebb, when testifying, referred to themselves and Matthewson as partners. But statements of this kind cannot overcome the legal effect of the contract or the attendant facts and circumstances where they show that no partnership in fact existed. *Zech v. Bell*, 94 Wash. 344, 162 Pac. 363.

In addition to this, the evidence shows, and the trial court found, that, when Tebb took the assignment from Matthewson, he was acting only on his own behalf, and was not acting as the agent of Anderson.

Matthewson further contends that he is released from the original obligation because, when he sold his interest to Tebb, he thereby became a surety, and not a principal; and that, when the president of the salmon company agreed with Tebb that that company would reduce the monthly payments on the contract, he was released as such surety. The answer to this contention is that, when the president of the salmon company consented to the reduction, he only knew that Tebb "said that he had decided that he would have to take over the operations from Mr. Matthewson. . . ." It does not appear that the president had knowledge that Tebb was intending to, or had purchased, Matthewson's interest. Under this statement of facts, Matthewson was not released, even though, as between himself and Tebb, he was a surety, and not a principal. 20 R. C. L. 987, § 223; *Moon Bros. Carriage Co. v. Devenish*, 42 Wash. 415, 85 Pac. 17; *Sefton v. Hargett*, 113 Ind. 592, 15 N. E. 513.

There are some other questions discussed in the briefs, but, in view of the holding on the questions above covered, they do not appear to be of sufficient

importance to justify a detailed discussion. It is sufficient to say that in none of them do we find substantial merit.

The judgment will be affirmed.

BLAKE, C. J., MILLARD, ROBINSON, and SIMPSON, JJ., concur.

[1]Reported in 101 P. (2d) 604.