ROLAND F. WAITE, APPELLANT, v. RONALD SALESTROM
AND PHILIP GARDNER, APPELLEES.
— N. W. 2d —

Filed July 1, 1980.  No. 42712.

Abrahams, Kaslow & Cassman, for appellant.

Thomas C. Emery, for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

This is an action by the plaintiff, Roland F. Waite, one of a number of limited partners in Ozark Skyrise, Ltd., against Ronald Salestrom and Philip Gardner, the general partners in Ozark, to recover a money judgment of $18,500 upon a promise signed by

Salestrom only. The promise was in letter form and, insofar as it is pertinent to our purposes, was as follows:

Mr. Roland F. Waite
10345 Broadmoor Court
Omaha, Nebraska
  Re:  Ozark Skyrise, Ltd.
Dear Mr. Waite:

This letter is intended to confirm our discussions concerning your investment as a Limited Partner of Ozark Skyrise, Ltd. I represent to you as follows:

. . . .

2. In the event the project is not completed, the full amount of your investment will be refunded less expenses incurred not to exceed the sum of $1,500.00.

3. Except as to the amount of your investment, I agree to indemnify and save you harmless from any personal liability arising out of or in connection with said limited partnership including, but not limited to, any violation of the State or Federal Securities Act.

. . . .

Very truly yours,
/s/ Ron Salestrom
Ron Salestrom

The petition alleged that the letter was delivered as an inducement to Waite to make a $20,000 investment in Ozark, and the evidence indicated that the letter was delivered at the time Waite made the second of two $10,000 payments.

At the close of the evidence, the court, trying the case without a jury, found that Waite had failed to sustain his burden of proof as to a cause against Gardner and dismissed Waite's petition as to Gardner. Pursuant to a stipulation made during the course of the trial, the court entered judgment for

$18,500 against Salestrom. Waite appeals from the dismissal as to Gardner.

His argument here is that, as a general partner, Salestrom had authority to bind Gardner. He relies upon the general principle: "Whatever one partner does in the course and scope of the partnership business is the act of the firm and all the partners and is binding on them, notwithstanding it is done without the knowledge or consent of the other partners." 68 C.J.S. *Partnership* § 137 (1950).

We sustain the action of the trial court and affirm the judgment for the reason that the evidence is sufficient to sustain a finding by the court that Salestrom, in executing and delivering the letter to Waite, bound only himself and not the partnership.

Salestrom testified that, in executing the letter agreement, he was acting on behalf of the partnership. He acknowledges, however, and the evidence otherwise shows without contradiction, that the agreement was made without the consent or knowledge of Gardner, the other general partner. There is no evidence from which it may be inferred that the promise was made with consent or knowledge of the other limited partners. The partnership agreement and certificate of limited partnership, among other things, provided: "The character of the business is to develope [sic], own, and manage a Sheraton Resort Complex in Lake of the Ozarks, Missouri." The agreement also named the two general partners and listed the limited partners and the amount of their contributions.

The instrument contained the following provision: "It is hereby agreed by the general partners that if the projected occupancy of the hotel is not above SIXTY-FIVE PER CENT (60%) [penned correction] according to the Real Estate Research Study all funds will be returned to the limited partners minus Phase I expenditures or a minimum of EIGHTEEN [penned correction initialed "RS"] THOUSAND

DOLLARS ($18,000.00) [penned correction initialed "RS"] returned per individual." The uncontradicted evidence shows that the "Real Estate Research Study," referred to in the paragraph quoted above, projected an occupancy rate of 71 percent. The agreement and certificate contain other provisions related to the operation of the partnership which are not pertinent to the issue to be decided.

The evidence shows that the enterprise was to be carried out upon land purchased by the partnership from Waite under a land contract. The partnership was unable to pay for the property and foreclosure occurred. The partnership is without assets.

The principles which govern the disposition of this case are the following: "A general partner [of a limited partnership] shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners . . . ." Neb. Rev. Stat. § 67-209 (Reissue 1976). The statute above cited contains certain exceptions not pertinent to this case.

"A certificate [of limited partnership] shall be amended when (a) There is a change . . . in the amount or character of the contribution of any limited partner, . . . (j) The members desire to make a change in any other statement in the certificate in order that it shall accurately represent the agreement between them." Neb. Rev. Stat. § 67-224(2) (Reissue 1976).

"A limited partner shall not receive from a general partner or out of partnership property any part of his contribution until (a) All liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid or there remains property of the partnership sufficient to pay them . . . ." Neb. Rev. Stat. § 67-216(1) (Reissue 1976).

The scope of a general partner's authority as limited by § 67-209 is defined by Neb. Rev. Stat. §

67-309(1) (Reissue 1976) of the Uniform Partnership Act as follows:

> Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

" 'Where the partners are disclosed and known to a party contracting, and the contract is signed by only one partner who contracts in his own behalf, the other partners are not bound thereby.' " *Ogallala Fertilizer Co. v. Salsbery,* 186 Neb. 537, 540, 184 N.W.2d 729, 731 (1971), quoting 68 C.J.S. *Partnership* § 146 (1950).

A partnership agreement may be modified only by the unanimous consent of all the partners express or implied. *Appeal of Jennings,* 16 A. 19 (Pa. 1888); *Alaska Pac. Salmon Co. v. Matthewson,* 3 Wash. 2d 560, 101 P.2d 606 (1940); Crane & Bromberg, Law of Partnership 276 (1968).

Applying the foregoing principles to the evidence before the trial court, its findings for the defendant Gardner were justified on at least two grounds. First, the letter agreement was not executed in the course of carrying out the partnership business which was that of developing, owning, and managing a recreational complex. The letter agreement providing for a unilateral refund of a partnership contribution amounted to a modification of the partnership agreement which would require the consent of all the partners. The making of the letter agreement was not within the scope of a general partner's

authority and, therefore, did not bind the defendant Gardner, the other general partner, who knew nothing about it.

Secondly, the letter agreement, on its face, purported to be an individual obligation and not that of the partnership. Waite, one of the limited partners who signed the partnership agreement and certificate, must be deemed to have known its contents and the identity of the other partners. There was no proof that the other partners consented to the change. The issue, therefore, under the evidence is also governed by the principle stated in *Ogallala Fertilizer Co. v. Salsbery, supra.*

It is unnecessary to consider other matters discussed in the briefs.

AFFIRMED.