ARMSTRONG v. SIMMS et al.

(Court of Civil Appeals of Texas. Nov. 30, 1910. Rehearing Denied Dec. 21, 1910.)

1. PLEADING (§ 214*)—DEMURRER—SUFFICIEN-CY OF PETITION.

The court, in considering the sufficiency of a petition as against a demurrer, must take the allegations thereof as true.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 525–534; Dec. Dig. § 214.*]

2. PARTNERSHIP (§ 98*) — OBLIGATION OF PARTNERS—GOOD FAITH.

Where one, ignorant of the oil business, which requires skill, experience, and expert knowledge, trusted in the superior knowledge of an associate in the business who was an expert, the latter could not by misrepresentations defraud the former without becoming liable therefor.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 152; Dec. Dig. § 98.*]

3. PRINCIPAL AND AGENT (§ 48*)—ACTS OF AGENT—LIABILITY.

An agent may not in equity deal with the matter of his agency in such a manner as to injure his principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 78; Dec. Dig. § 48.*]

4. PARTNERSHIP (§ 98*) — OBLIGATIONS OF PARTNERS.

The rule that the members of a firm owe to each other good faith, and that each has a right to know what the others know, applies to all classes of partnership, and a member of a nontrading firm may not enter into conspiracies to defraud other members out of their interest in the firm property.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 152; Dec. Dig. § 98.*]

5. PARTNERSHIP (§ 20*)—EXISTENCE OF RELA-TION.

Defendant, an expert in the oil business, obtained an oil lease which was about to lapse because work was not begun. He sold to plaintiff an interest in the lease to procure funds to develop the property. It was agreed that defendant should manage the business and devote his skill and ability to the work for the joint profit of both parties, and both parties were to share alike with each other in the enterprise after it was put under headway. Held, that the parties were partners, and that, where defendant defrauded plaintiff out of his interest in the lease, he and a third person participating in the fraud were liable therefor.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 6, 7; Dec. Dig. § 20.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by W. E. Armstrong against E. F. Simms and another. From a judgment of dismissal, rendered on sustaining a general demurrer to the petition, plaintiff appeals. Reversed and remanded.

Hunt, Myer & Townes and A. L. Jackson, for appellant. John Hamman and Carlton & Townes, for appellees.

FLY, J. This is a suit to set aside a contract of compromise and settlement of partnership differences made by appellant and appellee Simms, whereby the former sold to the latter his interest in a certain lease of oil lands for the sum of $8,000, which compromise was alleged to have been procured by fraud and deception on the part of appellees. The court sustained a general demurrer to the petition and dismissed the action.

The pleadings of appellant are unnecessarily voluminous, and, we shall content ourselves with giving merely a résumé of the same. It is alleged that appellant and appellee Simms each owned one-half of nine-twelfths of a certain oil lease covering 120 acres of land out of the northwest corner of the Robert Dunman one-third of a league; that appellee Simms had secured the lease; that he was thoroughly skilled in drilling and operating oil wells; that the lease was about to lapse on account of work not having been begun, when appellee Simms, for the purpose of obtaining financial assistance and co-operation, sold to appellant one-half of the lease interest for $6,000, and they entered into a contract of partnership for the development of the property, in which it was agreed that appellee Simms should assume "the care, management and prosecution of the said joint business, look after the fulfillment of the covenants and agreements made in said J. T. Mason lease, and the protection of the rights of these parties thereunder; and shall consult and advise with said W. E. Armstrong in the conduct of said business, and in regard to the purchases of machinery, piping and equipment. * * * The said Simms shall devote his knowledge, skill and ability, proper care and diligence, to the superintendence of said business to the joint profit and advantage of both parties." It was also provided that the parties were to share alike with each other in the enterprise after it had been put under headway; the whole management being under the control of appellee Simms. Appellant alleged that he was inexperienced and without knowledge of the oil business, and was compelled to rely on the opinion of experts; that appellee Simms did not, as agreed, sink a proper test well, but conceived the purpose and design to cheat and defraud appellant out of his interest, and in furtherance of that design began to decry the value of the lease, stating that it was worthless and could not be sold; that about that time appellee Simms conspired with the J. M. Guffey Petroleum Company, the other defendant, to cheat appellant out of his interest, which was of the actual and marketable value of $75,000, which fact was well known to appellees, but was unknown to appellant, who "had great faith in the judgment and knowledge of said Simms in reference to such matters, on account of the partnership relation and the general reputation of Simms as an expert on such matters." It was alleged that a one-twelfth interest in the lease was transferred by Simms to W. S. Farrish.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

It was further alleged: That on or about January 4, 1906, Simms and Farrish and the J. M. Guffey Petroleum Company, in furtherance of the design to defraud appellant, sold to the said company for $25,000 in cash one-half of their respective interests in the oil lease, and Simms obligated himself to procure the interest of appellant and permit said company "to take over a one-half interest in said Armstrong's interest upon the repayment by said J. M. Guffey Petroleum Company to said Simms of one-half of the price he might pay said Armstrong." That said agreement and transaction was carefully concealed from appellant, and the written contract evidencing the agreement was not placed upon record until months thereafter, when the object of the conspiracy had been attained; but Simms continually represented to appellant that said leasehold was worthless, and that no purchaser could be found for the same. That, in furtherance of the conspiracy to defraud appellant, it was agreed that Simms should institute suit, the petroleum company to pay one-half of any judgment that might be obtained against Simms, and that if appellant, under stress of the suit, abandoned his claim, or there was judgment in favor of Simms for the same, the petroleum company was to have a one-half interest in the same. That Simms instituted the suit, praying that the claim of appellant in the lease be forfeited and invested in him, which suit was brought to trial, and, while the same was in progress, appellant being ignorant of the agreement and conspiracy aforesaid, and "believing and relying upon the express and implied fraudulent and false representations of said Simms that the same were of little value, and being harassed by the suit, sold and conveyed to said Simms his one-half interest in the property for $8,000, being the exact amount appellant had paid out on the property."

The foregoing comprise, without detail, the salient points in the petition, and we think the petition states a cause of action. Simms was an expert in charge of the property, in whom confidence was reposed by appellant, and, whether he was a partner or not, he had no right in law and morals to form a conspiracy, and successfully carry it out, to defraud appellant out of his interest in the property. If the allegations are taken as true—and they must be so taken in considering this demurrer—appellant was ignorant of the oil business, which requires experience, skill, and expert knowledge, and trusted in the superior knowledge of his associate, and by the misrepresentations and scheming of the latter was induced to part with his property for a miserable pittance as compared with its true value. We are not disposed to enter into any niceties and fine distinctions between trading and non-trading partnerships, being satisfied to rest the matter in the confident assertion that,

whenever a man has obtained a place where trust and confidence is reposed in him by another, he cannot use his position to defraud the confiding one out of his property, and any other party who knowingly aids and abets and is the beneficiary of the swindle should be made to answer, with the trusted person, in the damages resulting from the fraud and deceit.

There may not have been any "affirmative duty resting on Simms to tell Armstrong what he thought about the value of his property, nor tell him what he had sold a part interest therein to the Guffey Company for"; but it was a duty demanded by his position of trust, as well as by the rules of honest and upright dealing, to not deceive appellant as to the value of his property at a time when he knew it was very valuable. It may be, as stated by appellees, that "the worth of oil land is speculative"; but the fact that the Guffey Petroleum Company, one of the chief experts of the country, was a purchaser of a one-fourth interest in the property at $25,000, and was anxiously seeking to obtain the interest of appellant, were facts which would have given value to the land in any market.

If no partnership existed, appellee Simms had been placed in possession and control of the property as the agent of appellant and occupied a position of trust, which should not be used and employed to deceive his principal and defraud him of his property. The agent cannot, in equity, deal with the matter of his agency in such a manner as to injure his principal. Borden v. Houston, 2 Tex. 594; Satterthwaite v. Loomis, 81 Tex. 64, 61 S. W. 616.

The allegations, however, show a partnership between the parties, and the members of a partnership owe to each other the most scrupulous good faith. Each one has a right to know what the others know, and their relation is one based on the strictest confidence. This rule is applicable to all classes of partnership. Bates, Partnership, §§ 303, 304. We have found no case that licenses one member of a nontrading firm to enter into conspiracies to defraud other members out of their interest in the partnership property, and appropriate it to his own benefit. The basis of every partnership is good faith between the members thereof, and this principle is enforced in all decisions to which our attention has been drawn, and we can with perfect confidence assert that there is no exception to it.

In the case of Butler v. Edwards, 50 S. W. 1045, the facts were similar to those alleged in this case, and the court held: "Butler being a partner, he was entitled to be informed of the true status of the transaction with McCall; and if Fowler Edwards informed him that said cattle had not been disposed of, or if that fact was concealed from him, and plaintiff sold his interest in igno-

rance of that fact, and was thereby damaged, he is entitled to rescind the sale, and have an accounting of the partnership matters. Under the circumstances, good faith on the part of said Edwards required that he inform plaintiff of the true state of affairs in relation to their partnership business, and, failing to do so, he cannot defeat a rescission of the contract and reap the benefits arising therefrom." The facts in that case were not as strong as the allegations in this.

The case of Prude v. Campbell, 85 Tex. 4, 19 S. W. 890, is authority not only for the proposition that Simms would be liable for the fraud committed against his partner, but that the petroleum company, which was actively engaged with him in defrauding appellant, would also be liable. The petroleum company, according to the allegations of the petition, was a party to and a beneficiary of the fraud, and should be made to respond to the suit as well as its co-conspirator. The compromise, having been procured by fraud and deceit, can be set aside and rescinded.

The judgment is reversed, and the cause remanded.