## PERPETUAL ROYALTY SYNDICATE et al. v. ALBRITTON.

### No. 14190.

Court of Civil Appeals of Texas.
Fort Worth.
March 14, 1941.

Rehearing Denied April 11, 1941.

Kilgore & Rogers, of Wichita Falls, for appellants Perpetual Royalty Syndicate, Cox, and Hamon.

Harris & Martin, of Wichita Falls, for appellant Lloyd Dixon.

Brannan & Tipps, of Wichita Falls, for appellee Albritton.

SPEER, Justice.

O. B. Albritton instituted this suit against Perpetual Royalty Syndicate, a common-law trust with E. E. Scannell as its sole trustee, Edwin B. Cox and Jake L. Hamon to recover an undivided one-eighth interest in moneys paid, and to establish his right to receive a proportionate amount out of additional sums promised to be paid from oil runs, for an oil and gas lease on fifty acres of land in Archer County, Texas.

Albritton's pleadings disclose that his suit is based upon substantially the following conditions: In March of 1938, a test well had been drilled in the area of the lease described and it was believed to be a producer. Plaintiff and E. E. Scannell procured the lease in question, with the agreement that plaintiff should own one-eighth and Scannell the remaining interest; that for convenience the title to the lease was taken in the name of Perpetual Royalty Syndicate, to which we shall refer as Syndicate; that if one of the owners desired to sell his interest to a third party, the other would join in such sale or would pay to the one desiring to sell a sum equal to the bona fide offer made by such third party, for the interest the proposed seller had in the lease. That in the latter part of 1938, Albritton moved to Illinois and was out of touch with oil developments in Archer County; that Scannell, trustee for the Syndicate, remained in Texas and was familiar at all times with values of leases in the area and with oil developments in

that vicinity; plaintiff relied upon Scannell to keep him posted on all matters of mutual interest; that in May, 1939, Scannell, as trustee for Syndicate, wrote plaintiff that he had been offered $50 in cash and $50 in oil per acre for the lease, advising that he believed it a good sale, and asked plaintiff if he desired to sell on that basis; relying upon the statements of Scannell, plaintiff attached his letter of interest in the lease to a draft on Perpetual Royalty Syndicate for $312.50 and sent all to a Wichita Falls bank. That plaintiff sent his letter of interest to the Syndicate to enable it to sell the lease to the third party, whom he had been advised had made the offer of purchase, and believed the Syndicate was selling its interest in the lease to such third party, at the price plaintiff was receiving for his interest. That the Syndicate did not sell its interest at that time for that price, but by the fraudulent means alleged, procured plaintiff's interest for the price mentioned.

Plaintiff further alleged that later, during the same year that the Syndicate had procured his interest in said lease in the manner set out, it sold the lease to Edwin B. Cox and Jake L. Hamon, for $11,000 in cash and $49,250 in oil payments to be paid out of three-sixteenths of eight-eighths of all oil produced and saved from said lease; that said sale to Cox and Hamon was secretly negotiated by the Syndicate without the knowledge of plaintiff and without informing him of the true amount received for same. That plaintiff returned to Texas and learned of the proposed deal before it was finally consummated; that he immediately notified Cox and Hamon of his interest therein and prepared an instrument disclosing same and caused it to be filed for record in Archer County, Texas, on October 31st, 1939; that after full notice, both actual and constructive, Cox and Hamon closed the deal with the Syndicate and made payment of the purchase price. Allegations were made that the Syndicate was obligated to notify plaintiff, through its trustee, of all matters pertaining to said lease and its value; to make full disclosures to him from time to time of all matters which affected their mutual interests, but that it failed to do so, and fraudulently led plaintiff to believe it was selling its interest to a third party at the time and price plaintiff was induced to part with his interest; that none of said representations so made to him was true.

Prayer was for $1,375, less the $312.50 previously paid, and for a decree establishing plaintiff's right to one-eighth of the $49,250 to be paid in oil out of three-sixteenths of eight-eighths of the oil produced and saved from said lease, for costs and for general and special relief.

Defendant, Perpetual Royalty Syndicate, acting by and through its trustee, E. E. Scannell, answered by general denial and by special pleas, to the effect that it had from time to time endeavored to sell the lease, and having been informed that a third party would pay $50 in cash and the same amount in oil payments for the lease, and believing it a good price, notified plaintiff Albritton and asked if he desired to sell at that price; was advised that he did and it asked him to attach his evidence of interest to a draft on it for $312.50, to cover his interest in the lease; that when the draft came to the bank, it had to be paid or returned, and while the sale had not been closed, the trustee thought it would be, and to prevent returning the draft and to be placed in a position to close promptly when the buyer was ready, it permitted R. R. Robertson, who also owned certain interests in the lease under the Syndicate, to take up plaintiff's draft, and the letter of interest formerly belonging to plaintiff was issued to Lloyd Dixon, the son-in-law of Robertson. That the sale of the lease so contemplated was never closed, and in the manner mentioned Lloyd Dixon became the owner of the interest in the lease. It was further alleged that during the ensuing six months, lease values in the area became salable because of activities in the oil field; that in the fall of 1939, it sold the lease to Cox and Hamon. The Syndicate prayed that Lloyd Dixon be made a party to said cause and that if it was finally determined that the Syndicate was liable to plaintiff because of the interest so held by Dixon, that it have judgment against Dixon for such amount as it was required to pay thereon, and for general and special relief.

Cox and Hamon answered by general denial and specially that they bought the lease from the Syndicate upon the record title presented to them and without notice of the claims by plaintiff, except that he had not elected to rescind the purported sale as of March, 1939, but was seeking damages upon the grounds claimed by him;

their prayer was that any claim established by plaintiff be fixed as against the deferred oil payment promised by them in part consideration for the lease.

The impleaded defendant, Lloyd Dixon, answered by general denial, pleading specially that he purchased the interest of plaintiff Albritton in the manner pleaded by Perpetual Royalty Syndicate, paid for same without notice of any fraud or deceit practiced upon Albritton, and that he had received the cash consideration for his interest in the lease as paid by Cox and Hamon; prayer was that he be decreed to own his pro rata part of the deferred oil payments contracted to be paid by Cox and Hamon.

The plaintiff Albritton answered Dixon's pleadings by denying that he ever acquired the interest of plaintiff; that neither plaintiff nor the Syndicate ever contacted Dixon relative to a sale of the interest; that plaintiff never knew that Dixon claimed to be the owner of the interest until after the present suit was filed; that R. R. Robertson was agent for Dixon and acted for him in all matters pertaining to said transaction, and that Robertson knew all of the facts and circumstances connected with the whole transaction, and, through his said agent, Dixon knew them. That because of the fraud and deception of the Syndicate and its trustee, Scannell, the purported sale by plaintiff of his interest in said lease is and was void.

The case was tried to the court without a jury. Judgment was entered for plaintiff Albritton for $1,173.87, jointly and severally against the Syndicate, Cox and Hamon, and established his right to receive one-eighth of the deferred oil payment of $49,250 from three-sixteenths of all oil and gas produced and saved and sold from the lease, as provided in the lease from the Syndicate to Cox and Hamon. Cox and Hamon recovered judgment over against the Syndicate for any amount they should pay Albritton on the money judgment and should reserve same from its deferred payments in oil runs from the three-sixteenths reserved, not including the one-eighth interest decreed to Albritton. The Syndicate recovered against impleaded Dixon any sum it should be required to pay to plaintiff because of the claim of Dixon. Judgment was against Dixon denying him any relief. From this judgment all defendants, including Dixon, have appealed.

All appellants have joined in one brief. Six assignments of error are presented, representing a single complaint—that judgment should have been entered for appellants and not for appellee. These assignments are presented by as many propositions or reasons urged, and are properly briefed as a group. Among the reasons assigned why Albritton should not have recovered are: (a) No fraud is shown to have been committed by Scannell, trustee of the Syndicate; (b) plaintiff indisputably authorized the Syndicate to sell his share in the lease for $50 cash and the same amount to be paid in oil; this was done and plaintiff accepted the proceeds of sale; (c) the amount for which plaintiff sold his interest was the full and fair value at the time; (d) Scannell made full disclosure to plaintiff of all facts concerning the proposed sale and values at the time plaintiff transferred his interest; and (e) plaintiff failed to show that he suffered loss by reason of any alleged wrongs done by Scannell or the Syndicate.

There is no dispute in the evidence that plaintiff and Scannell bought the lease at the time and under the conditions pleaded by plaintiff; that they bought it for speculation purposes and placed the title in the Syndicate for convenience; and that they agreed either to sell together or if one did not want to sell he should have an option to buy the other interest at the price offered; that E. E. Scannell was the sole trustee of the Syndicate. As evidence of plaintiff's interest in the lease (along with another party, whose interest was acquired by plaintiff), the Syndicate issued the following letter: "Wichita Falls, Texas, March 9, 1938. Mr. Oscar Albritton, Wichita Falls, Texas. (The name of the other joint owner was included in the letter). Gentlemen: This letter evidences your undivided one-eighth interest in the following described lease: (Here follows a description of the land covered by the lease). It is agreed that in case of a bona fide offer of sale on this lease, that all parties will join in the sale or have three days within which to purchase the interest of the other parties interested, at the sale price submitted. An assignment for your jointly owned one-eighth interest will be executed at your request. (Signed) Perpetual Royalty Company, by E. E. Scannell, Trustee. Accepted: O. B. Albritton, 3–12–38."

Plaintiff left Wichita Falls and went to Illinois in October, 1938; Scannell re-

mained and was conversant at all times with values of leases in that area; the testimony indicates that because of a lack of activities in the field, leases did not enhance in value for the next few months, as had been anticipated by the parties; Scannell was advised by Mr. Robertson, who held an interest under the Syndicate, that a Mr. McAfee had offered to buy the lease at $50 cash and same amount in oil, per acre; Scannell said he believed it a good price and, on May 4th, 1939, wrote plaintiff: "We are offered $50.00 cash and $50.00 out of oil for our acreage in the Hull-Silk pool. Things are not so hot in this vicinity, and think it a good deal. * * * Let me know immediately if you will take this for your interest."

Plaintiff replied and gave his consent to making the deal. On May 11th, 1939, Scannell wired plaintiff to attach his letter of interest to draft on the Syndicate for the amount of his interest. Plaintiff complied and when the draft arrived, the deal had not been closed and Scannell permitted Robertson to take up the draft, and the interest of plaintiff was passed by a letter to that effect from the Syndicate to Lloyd Dixon, Robertson's son-in-law, who personally knew nothing about any part of the transaction. The sale to McAfee and his associates was never consummated. Scannell wrote plaintiff on June 15th, 1939, and sent him an assignment of the deferred oil payments provided for in the former transaction; again on October 10th, 1939, Scannell wrote and offered plaintiff $100 for his deferred oil assignment, just referred to by us; on October 19th, plaintiff offered to accept from Scannell $150 for the oil assignment, and on October 28th, 1939, Scannell wrote plaintiff to send the assignment attached to draft for the amount. This was done and Scannell acquired plaintiff's deferred oil payment for that price. At no time did Scannell ever inform plaintiff that the McAfee sale did not go through; plaintiff believed the Syndicate had sold its interests when it acquired his. The record before us discloses that on October 23rd, 1939, five days prior to the date on which Scannell acquired plaintiff's deferred oil payment, Scannell, acting as trustee for the Syndicate, had entered into a written contract with Cox and Hamon to sell them the lease for $11,000 cash and $49,250 in oil payments out of a designated portion of the lease. Subsequent to the time plaintiff sent his letter of

interest in the lease to the Syndicate and believed the whole lease had been sold, upon the terms he was to receive, other wells were drilled in the area, ranging in distance from the lease, from a half mile to two or three miles; these wells were producers and enhanced the sale value of the lease very much, as indicated by the price for which it was sold. These activities were never revealed to plaintiff, but Scannell's letters carried a discouraging note at all times. When questioned on this point, Scannell said he was under no obligation to tell plaintiff anything and what he did was purely because of friendship for Albritton.

Plaintiff returned to Texas late in October, and then for the first time learned the lease had not been sold at the time he was supposed to part with his interest; the deal with Cox and Hamon had not then been closed, and he informed them of his interest and prepared and had filed for record an instrument in Archer County to that effect. The contract of sale between the Syndicate and Cox and Hamon was later carried out and the contract price was paid to the Syndicate. Expenses of $1,609 were incurred by the Syndicate in consummating the deal. The expense was deducted from the $11,000 cash payment and plaintiff was awarded one-eighth of the remainder, the amount of the recovery being $1,173.87, with interest at 6 per cent. per annum from the date of the judgment, and a recovery establishing his right and title to one-eighth of the deferred oil payment promised by Cox and Hamon, as above indicated.

■■ It is clear to us that in the inception of this whole transaction, plaintiff and Scannell were partners in the lease, and when they, by mutual agreement, placed the record title in the Syndicate to enhance the interest of both, that relationship was not changed. To say the least of this particular transaction it was a joint adventure between them, and is controlled by the same rules of law, in so far as the parties are concerned, as if it had been a partnership. Obviously, both recognized the terms of the written agreement, above quoted, under which they held their respective interests. It may be said that Scannell believed the deal with McAfee would be closed and to enable it to be closed promptly, if, as and when the purchaser was ready, he had the interest transferred to Dixon. When the sale was not consummated, it became the duty of Scannell to inform

plaintiff of that fact and give him an opportunity to determine whether or not he would resume their former relationship and hold the lease until all could be sold together, as provided by the written agreement. This was not done, and although Scannell may have been innocent of having defrauded his partner, his omission of duty resulted in a legal fraud against plaintiff. The result to plaintiff is apparent. He was deprived of the privilege, if he had chosen to do so, of holding his interest in the lease and receiving his pro rata part of the greater sale price.

There was a fiduciary relationship between plaintiff and Scannell, and it is well settled that they owed to each other the duty to disclose every fact and circumstance which affected their joint interests. This rule is emphasized by the fact that the Syndicate, acting through Scannell, was buying plaintiff's interest; when they entered into the fiduciary relationship, they each agreed, as a matter of law, to have his conduct toward the other measured by the standards of the finer loyalties exacted by courts of equity. This is a sound rule and should not be whittled down by exceptions. As expressed by our Supreme Court, in Johnson v. Peckham, 132 Tex. 148, 120 S.W.2d 786, 787, 120 A.L.R. 720: "Since each is the confidential agent of the other, each has a right to know all that the others know, and each is required to make full disclosure of all material facts within his knowledge in any way relating to the partnership affairs. This necessity for good faith and the making of a full disclosure of all important information applies in the case of sale by one partner to another of his interest in the partnership." A similar rule was laid down by the Supreme Court in Prude v. Campbell, 85 Tex. 4, 19 S.W. 890. In Armstrong v. Simms, Tex.Civ.App., 132 S.W. 500, the Prude-

Campbell case was followed. It is the well-settled rule in other jurisdictions. See Meinhard v. Salmon, 249 N.Y. 458, 164 N. E. 545, 62 A.L.R. 1, and 20 R.C.L. 879.

Under the facts of this case, about which there is little or no controversy, we think no error is shown in the judgment as entered for the plaintiff, Albritton. The complaint by appellants is that judgment should have been entered for them and not for the plaintiff. All assignments of error are overruled and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

All defendants have joined in a motion for rehearing in this cause. We have carefully studied the motion and find nothing which leads us to believe that we have not properly disposed of the case.

Our attention has been called to an expression used in the opinion which is claimed not to be supported by the record. At one place in the opinion we stated substantially that certain correspondence between Scannell and Albritton, the dates of which we mentioned, showed that Albritton replied to an offer made by Scannell, agreeing to accept $150 for his deferred oil payment growing out of the sale which Scannell claims was fairly made, and that on October 28th, 1939, Scannell wrote Albritton to send his oil payment letter attached to a draft for that amount. We said: "This was done and Scannell acquired plaintiff's deferred oil payment for that price." Defendants say that the record does not show that the deal was ever closed, and hence our quoted statement is not supported by the record. The contention is correct and we withdraw the quoted statement in the interest of clarity.

With the correction made as indicated, the joint motion for rehearing is overruled.