### RODGERS v. TRACY et al.
#### No. 6162.

Court of Civil Appeals of Texas.
Amarillo.

July 16, 1951.

Rehearing Denied Sept. 10, 1951.

Cantey, Hanger, Johnson, Scarborough & Gooch, and Carlisle Cravens, Fort Worth, Texas, and Klett, Bean, Evans & Justice, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Lubbock, for appellees.

LUMPKIN, Justice.

The plaintiff, W. L. Rodgers, brought this action against the defendants, H. H. Tracy, George H. Tracy and H. H. Tracy, Jr., for an accounting of the money they had received for the sale of certain oil, gas and mineral leases on lands in Scurry County and for a partition of the over-riding royalties they had retained as a part of the sale consideration. After the introduction of plaintiff's testimony in a trial before the jury, the court directed a verdict in favor of the defendants and rendered judgment accordingly. From this judgment the plaintiff duly excepted and has perfected his appeal to this court.

The plaintiff's home is at Denton. For several years prior to World War II he was employed by the Gulf Oil Company as a member of a seismograph crew. In 1946 the plaintiff, who was then engaged in the business of buying and selling oil leases, came to Post, Garza County, where he met H. H. Tracy of Lubbock and his two sons, George H. Tracy, manager of the Algerita Hotel at Post, and H. H. Tracy, Jr. He represented to the Tracys that he had information concerning the mineral possibilities of certain sections of Scurry County. He said that his informant was interested in securing leases in Scurry County but that he wanted his identity to be unknown to everyone except the plaintiff. The plaintiff alleged that "in about September, 1946, plaintiff and defendants, H. H. Tracy and George H. Tracy, together with one unidentified party known only to the plaintiff, Rodgers, entered into a partnership agreement and arrangement whereby all of said parties jointly and as partners acquired leases in Scurry County, Texas * * *." During the early months of 1947, the parties worked together in acquiring a total of 1,240 acres of leases in Scurry County. Most of the money to buy them came from a loan of $4,000 H. H. Tracy had obtained from a Lubbock Bank. During the period covered by the partnership, the parties were trying to dispose of some of their leases and repay the money Tracy had borrowed. In the beginning the agreement between the parties had been verbal, but on July 5, 1947, they signed the following memorandum:

"That we have entered into this agreement for the purpose of designating what interest, H. H. Tracy, George H. Tracy, and W. L. Rodgers will have in 1240 acres of leases in Scurry County, Texas, located as follows:

"All of Section 164, West 1/2 of Section 178, the S.E. 1/4 of Section 179 and the NW 1/4 of Section 165, Block 97, H. & T. C. Ry. Co. Survey, Scurry County, Texas.

"It is agreed that the three above mentioned parties will work together in all transactions pertaining to the above mentioned acreage. When the lease money and expense money on this acreage has been paid back to the three above mentioned parties it is further agreed that if the amount of acreage which is left the present lease holders warrants it, that forty acres of the above mentioned acreage will be assigned to the lawyers that have examined the abstracts on these leases; and on the acreage left the lease holders, that it will

be shared as follows: H. H. Tracy is to receive one-third (1/3) of the acreage; George H. Tracy and W. L. Rodgers and one unidentified party, known only by Rodgers, will share the remaining two-thirds (2/3), by sharing and share alike. It is understood that the interest that H. H. Tracy and George H. Tracy and W. L. Rodgers and the unidentified party have will be an undivided interest in and to all of the acreage described above."

The plaintiff alleged that shortly before November 13, 1947, the defendants were offered "Fifteen Dollars ($15.00) per acre and an over-riding royalty of One-sixteenth (1/16) of total production, or some other comparable amount, for a transfer and assignment of lease of the Three Hundred Seventy (370) acres of land in Section One Hundred Sixty-four (164)." The plaintiff however alleged that he had not known of this offer. On November 10, 1947, the defendants demanded of the plaintiff a dissolution of their partnership and a division of the lease assets in which they especially asked for the 370 acres in Section 164. The plaintiff was hesitant about entering into any partition agreement but, after being threatened by defendants' attorney with a partition suit, he came to Post and agreed to a division of the lease assets. This was done on November 13, 1947. The defendants received, among other assets, the 370 acres in Section 164. The plaintiff's pleadings continue: "Throughout the negotiations for such partition, and at all times in connection therewith, the defendants secreted from plaintiff their knowledge of the value of the Three Hundred Seventy (370) Acre lease, and withheld from him the fact of an offer being made therefor at Fifteen Dollars ($15.00) an acre, plus an override." The plaintiff alleged that he did not know the value of the lease, which was the most valuable lease property held by the partners. The plaintiff further alleged that before he discovered that an offer had been made on the 370 acres, he sold his own share of the partition to the Humble Oil and Refining Company for a cash consideration of $5,000 plus an override royalty of 1/16 out of 7/8 of all production.

He offered to convey to the defendants their share of this consideration.

It appears that the offer to George H. Tracy on the 370 acres in Section 164 was made by J. A. Matthews, an independent oil operator living at Midland. The Matthews' offer was never closed.

As a result of the partition, the defendants received 610 acres, including the 370 acres in Section 164, and the plaintiff received 160 shares. The unidentified party, in Rodgers' name, received 160 acres. The defendants eventually received about $60,000, together with certain overrides, for the leases they acquired in the partition. According to his allegations, it was not until June or July, 1949, and after he had sold his share of the partition, that the plaintiff learned of the Matthews' offer to George H. Tracy.

But before he did learn this, on November 2, 1948, the plaintiff signed an affidavit in which he stated that the unidentified party named in the agreement of July 5, 1947, was William Rodgers. On the same day he executed a disclaimer to those leases which the defendants had received as a result of the partition of November 13, 1947. These instruments were executed at the defendants' request in order to clear their record titles to those leases they had received in the partition. It is admitted that the plaintiff, W. L. Rodgers, and William Rodgers are the same person.

In answer to the plaintiff's allegations, the defendants denied that they had received an offer on the 370 acres immediately prior to the partition. They alleged that the partition was fairly made, and further they pleaded that on or about November 2, 1948, the plaintiff disclaimed any interest in the leases which had been acquired by the defendants. Moreover, they pleaded ratification and the doctrine of unclean hands.

In determining whether a trial court's action in granting a motion for a peremptory instruction was proper, the appellate court will view the evidence in the light most favorable to the losing party, it will disregard the conflicts in testimony, and it will indulge, in favor of the appel-

lant, every intendment reasonably deducible from the evidence. White v. White, 141 Tex. 328, 172 S.W.2d 295; Fitz–Gerald v. Hull, Tex.Sup., 237 S.W.2d 256. When an appeal is from a judgment on an instructed verdict for the defendant, the controlling question is whether there is any evidence in the record which, when considered by itself, would, if accepted by a jury, have raised an issue of fact which would have supported a judgment in favor of the plaintiff. Continental Ins. Co. of City of New York v. Johnson, Tex.Civ.App., 216 S.W.2d 635, writ refused. However, an appellate court will not reverse a judgment based on an instructed verdict unless the appellant demonstrates that there is sufficient evidence to support fact-findings in accordance with his cause of action. Neyland v. State, Tex.Civ. App., 151 S.W.2d 331.

■ The defendants contend that since the Matthews' offer never resulted in a sale, they received no benefit from it and the plaintiff suffered no prejudice because of it and that, therefore, as a matter of law, the plaintiff does not have the right to set aside the partition agreement. We do not agree with this contention. In the first place, the plaintiff is not seeking to set aside the partition agreement which involves leases now owned by third parties, but, rather, for an accounting of the monies received by the defendants for these leases together with a division of the overriding interest the defendants have in them. Secondly, the plaintiff insists that if he had known of the Matthews' offer, his attitude toward the partition agreement of November 13, 1947, would have been different.

The evidence, viewed from the plaintiff's standpoint, reveals that on October 29, 1947, Matthews discussed with George H. Tracy the purchase of 370 acres out of Section 164. Tracy did not inform plaintiff of this offer. He had his attorney phone the plaintiff and threaten a partition suit unless he agreed to a division of the partnership leases. Two days after the partition, George H. Tracy agreed to sell to Matthews the deep rights (below 4,000 feet from the surface) to the 370 acres for $14 per acre. Up to the time of this sale the partners had been primarily engaged in an effort to drill a well to a depth not greater than 3,500 feet. Although the partners had hopes of production at greater depths, they had had no knowledge of any interest in deep rights. The plaintiff contends that when Matthews evidenced an interest in the deep rights to a particular 370 acres, it was material and important information to any one in the oil business and a matter about which all members of the partnership were entitled to have equal knowledge. This knowledge was withheld from the plaintiff. According to the witness Matthews, who testified by deposition, on October 29, 1947, he offered Tracy, for the Stanolind Oil and Gas Company, $15 per acre for the lease on the 370 acres. Matthews knew of the plaintiff's interest in the leases. He asked the defendant, George H. Tracy, what he should do in regard to Rodgers' interest. He was told that the plaintiff "was a difficult fellow to contact for he travelled and I believe he told me at that time he was in Illinois and he thought it best for me to let him (Tracy) contact him." The deal with Matthews fell through because of a title defect, but soon thereafter the defendants were able to sell these particular leases for a substantial sum.

■ In the case of Johnson v. Peckham, 132 Tex. 148, 120 S.W.2d 786, 787, 120 A.L.R. 720, the Supreme Court of Texas laid down the rule by which partners are to be governed in their dealings with each other. In that case Peckham and Johnson were the owners of two oil and gas leases. Shortly before Peckham purchased Johnson's interest for $1,500, he negotiated with third parties for the sale of these leases. Peckham did not disclose this information to his partner. After he acquired Johnson's interest, he sold the interest to third parties for $10,500. In discussing the case, the Supreme Court said: " 'Since each [partner] is the confidential agent of the other, each has a right to know all that the others know, and each is required to make full disclosure of all material facts within his knowledge in any way relating to the partnership affairs. This necessity for good faith and the making of a full disclosure of all important information applies in the case of a sale by one partner to another of

his interest in the partnership. Such a sale will be sustained only when it is made in good faith, for a fair consideration and on a full and complete disclosure of all important information as to value.' * * * When persons enter into fiduciary relations each consents, as a matter of law, to have his conduct towards the other measured by the standards of the finer loyalties exacted by courts of equity. * : * * The absolute duty to disclose was upon Peckham."

■■■ Thus, the plaintiff had a right to know of Matthews' offer, an offer which, if accepted, would have paid H. H. Tracy what he had put into the leases and would have affirmed the partners' judgment as to the potential value of their holdings. Although the Matthews' offer failed, nevertheless the plaintiff was deprived of the privilege of holding his interest in the 370 acres and receiving his pro-rata part of the greater sales price. It is a question of fact whether Matthews' offer and his interest in the deep rights under the particular 370 acres was sufficient to affect the value of them. Likewise, it is a question of fact whether the information relative to Matthews' offer would have affected the location of those leases received by the plaintiff as a result of the partition. In our opinion these questions should have been determined by the jury. Armstrong v. Simms, Tex.Civ.App., 132 S.W. 500; Perpetual Royalty Syndicate v. Albritton, Tex. Civ.App., 149 S.W.2d 700.

■■■ In their defense the defendants invoke the maxim that "he who comes into equity must come with clean hands." They contend that the plaintiff acquired the interest of the unidentified party without notifying them; that the plaintiff made a false affidavit when he swore on November 2, 1948, that the unidentified party was William Rodgers; and that the plaintiff was guilty of inequitable and unconscientious conduct toward the public when he acquired for a nominal sum the interest of the unidentified party.

The plaintiff concedes that he has no cause of action if, from the beginning, he and the unidentified person were one and the same and if he concealed this fact from the defendants. On November 2, 1948, the plaintiff signed an affidavit in which he stated that the unidentified party was William Rodgers. On the same day he executed a disclaimer to those leases which the defendants had received as a result of the partition. These instruments, as we have seen, were executed at the defendants' request.

At the trial the plaintiff explained his affidavit of November 2, 1948. He said Curtis Hankamer was the unidentified party named in the agreement of July 5, 1947. He explained that on November 5, 1947, and without the knowledge of his partners, he had traded Hankamer the interest he had in some leases in Wise County for Hankamer's interest in the Scurry County leases. (Hankamer was in the courtroom but did not testify). The plaintiff said that until the trial he had been forbidden to reveal the name of the unidentified party and explained he had acquired Hankamer's interest in the leases before he made the affidavit. The trial court did not permit the jury to pass on the validity of this explanation but held, as a matter of law, that the affidavit was conclusive against the plaintiff.

The defendants contend that since they were not notified of the opportunity to acquire the interest of the unidentified party, the plaintiff acted in bad faith and is not justified in seeking equitable relief. The plaintiff contends that his purchase of the unidentified party's interest was not partnership business and therefore he could freely deal with this unidentified person and could secure his interest without having to reveal to his partners what he was doing. Summerlot v. Hamilton, 121 Ind. 87, 22 N.E. 973; Alaska Pacific Salmon Co. v. Matthewson, 3 Wash.2d 560, 101 P.2d 606.

Nor, in our opinion, is the plaintiff to be denied the right to present his case to a jury because of the maxim of unclean hands. It has been held that this maxim should not be applied when the defendant has not been seriously harmed and the wrong complained of can be corrected. 30 C.J.S., Equity, § 95, page 484; 19 Am.Jur. 328. Whether the defendants sustained an injury from the plaintiff's act in trading for the unidentified party's interest is a question

of fact. Moreover, the record does not reveal that the partition agreement was affected by the plaintiff's act. His acquisition of the unidentified party's interest did not prejudice the defendants nor was the making of the affidavit connected with the matters in dispute. 17 Tex.Jur. 50; Oliver v. Huckins, Tex.Civ.App., 244 S.W. 625; Lone Star Salt Co. v. Blount, 49 Tex.Civ.App. 138, 107 S.W. 1163.

■ The plaintiff's affidavit of November 2, 1948 is nothing more than an admission which he is entitled to explain. The jury should have been permitted to pass on this explanation. Harris County v. Hall, 141 Tex. 388, 172 S.W.2d 691; Turco Products, Inc., v. Nobles, Tex.Civ.App., 54 S.W. 2d 570.

■ The defendants maintain that the plaintiff ratified the partition agreement. They insist that after he learned of the Matthews' offer to George H. Tracy, the plaintiff sold to Humble Oil & Refining Company the leases he had received as a result of the partition; that this constituted an acceptance of the partition and that he is precluded by the acceptance from seeking equitable relief.

Again we must construe the evidence in the light most favorable to the plaintiff. Rodgers stated that he had not known of Matthews' offer at the time he sold his leases to Humble, that he had made the Humble assignments at the time he learned of the offer. On cross-examination he testified:

"Q. When you got your money and after they delivered these assignments, you knew about the Matthews' deal, didn't you? A. No, sir, I didn't.

"Q. Didn't at all, not a thing about it? A. At the time I got the money, I might possibly know about it. They had thirty days to pay it off after executing the deed."

Whether the plaintiff knew of Matthews' offer before he consummated his sale to Humble is a question of fact which, in our opinion, should have been submitted to the jury.

■ The defendants insist that the plaintiff's pleadings are insufficient because he has not asked for a cancellation and re-scission of the disclaimer of November 2, 1948. The nature of the relief sought by the plaintiff is for an accounting of the profits and benefits wrongfully obtained by the defendants as a result of the original partition. Under this theory it is not necessary for either the conveyances of November 13, 1947, or the disclaimer of November 2, 1948, which conveyed the mere legal title, to be cancelled, since the defendants, as constructive trustees, hold the legal title for the benefit of the plaintiff. Fitz-Gerald v. Hull, supra; Fidelity & Deposit Co. of Maryland v. Wiseman, 103 Tex. 286, 124 S.W. 621, 126 S.W. 1109.

We have carefully reviewed the record in this case. Our opinion, of course, is based upon the facts presented on this appeal. It does not attempt to determine the facts on the final trial. In our opinion the trial court erred in granting the peremptory instruction. The judgment is, therefore, reversed and the cause remanded for another trial.