**V. E. MORGAN, Appellant,**

**v.**

**Jim M. ARNOLD, Appellee.**

**No. 17265.**

Court of Civil Appeals of Texas.

Dallas.

May 9, 1969.

Rehearing Denied May 30, 1969.

Hugh O. Mussina, Dallas, for appellant.

Jerry Lastelick, of Daugherty, Bruner, Lastelick & Anderson, Dallas for appellee.

CLAUDE WILLIAMS, Justice.

Jim M. Arnold brought this action against V. E. Morgan seeking to recover both actual and exemplary damages arising from alleged false and fraudulent representations on the part of Morgan and constituting the basis of a dissolution of partnership agreement between the two men. Arnold alleged that he and Morgan had been equal partners since 1960 in a business known as Arnold & Morgan Piano & Organ Company in Garland, Texas; that in March 1967 Morgan offered to purchase Arnold's interest in the partnership business and as a part of his offer presented to him certain financial information concerning the net worth of the partnership which was purportedly extracted from the books and records of the company. He stated that Morgan represented to him that the net worth of the partnership was $77,577.42 which meant that Arnold's interest in the partnership had a value of $38,788.71. Arnold stated that he relied solely upon the representations and statements of Morgan, together with the purported financial statements presented to him by Morgan, and agreed to sell his interest for that amount. He alleged that such statement concerning the value of the partnership interest was false; that it was known by Morgan to be false; that he relied upon such false statement to his loss and detriment; and that but for such false representations he would not have entered into the partnership dissolution agreement. He also alleged that such false representations were willfully made by Morgan with intent to injure Arnold and that as a result thereof he was entitled to not only actual damages, representing the true value of the partnership interest, less what had been paid him, but also exemplary damages.

Morgan answered with a denial of the charges against him and also filed a "counter-suit" which was subsequently abandoned.

At the conclusion of the trial before the court and a jury a special issue verdict was returned in which it was found: (1) that before the contract of dissolution was signed Morgan represented to Arnold that the books and records of the partnership showed that the value of one-half of the net assets of the partnership was $38,778.71; (2) that such representation was false; (3) that such representation was known by Morgan to be false; (4) that such representation was made by Morgan with intent to induce Arnold to sign the contract; (5) that Arnold believed such representation when he signed the contract; (6) that Arnold relied upon such representation in signing the contract; (7) that without such representation Arnold would not have signed the contract; (8) that at the time of the dissolution of the partnership the actual value of one-half interest in the company was $51,447.96; and (9) that Morgan should pay Arnold exemplary damages in the sum of $25,000. Prior to submission of the charge to the jury the parties had entered into a stipulation agreeing to the form of Special Issue No. 8 which asked the jury to find the actual value of one-half interest in the partnership assets. It was also stipulated that if it was determined that Arnold is entitled to any recovery such recovery should be the difference between the jury's answer to Special Issue No. 8 and the amount received by Arnold for the sale of his interest in the partnership.

Based upon the verdict of the jury, together with the stipulation of the parties, the trial court rendered judgment in favor of Arnold and against Morgan in the sum of $37,659.25. This amount was arrived at by combining the sum of $12,659.25 (being the difference between the actual amount of the value of the partnership assets and the amount already received by Arnold), together with the sum of $25,000 as exemplary damages.

Since some of appellant's points of error relate to the question of "no evidence" or "insufficient evidence" to support the an-

swers of the jury to some of the special issues set out above, we deem it essential and desirable to summarize briefly the material testimony presented. It would unduly lengthen this opinion to summarize all of the testimony in detail since the trial was lengthy and the statement of facts consists of 683 pages.

Arnold had founded the business in 1955 which consisted mainly in the sale and refinishing of used pianos. Arnold brought Morgan into the business as an equal partner in the early part of 1960. The partnership was known as Arnold & Morgan Piano & Organ Company and the business grew in volume until several different departments were established. Arnold's responsibilities in the partnership consisted of purchasing, selling, refinishing and managing the service department. Morgan's responsibilities consisted generally in managing the office and exercising general supervision over the bookkeeping and accounting of the firm. Several employees worked under Morgan's direction and supervision in keeping the books and records. Arnold had very little knowledge or information concerning the bookkeeping methods of the partnership and also of the income tax returns and other reports prepared for the partnership. He relied upon Morgan for proper preparation of such returns and reports.

Some personal difficulties had arisen between the parties and about the middle of March 1967, Morgan approached Arnold and offered to purchase his interest in the partnership. It was agreed between the partners at that time that the basis of the sale would be the book value of the partnership assets with each partner receiving 50 per cent of such value. At the time of this discussion Arnold was not apprised of the partnership's profits for the preceding year (1966) and did not have any idea of the book value of his interest in such company. The negotiations for the sale began on Saturday, March 18, 1967 and continued the next day at Arnold's home. A tentative agreement was reached and an attorney was requested to prepare the final papers. On March 22, 1967 Morgan delivered to Arnold the articles of dissolution and also the financial schedules which had been prepared by one Mary Ferguson, an employee of the partnership, who had prepared the schedules in accordance with instructions given her by Morgan. These financial schedules reflected the one-half interest of the partnership as being $38,788.-71. Arnold testified that Morgan represented to him at that time that this amount was a true and correct value of one-half interest in the partnership assets. Arnold testified that he made no independent investigation to determine the correctness of the figures as reflected by the statements presented to him by Morgan and further that he did not test the accuracy of the accounts payable or notes payable or any other items contained in the schedules. He said that he reposed complete confidence in Mary Ferguson and in Morgan. Arnold testified that he received from Morgan the sum of $38,788.71 and executed the articles of dissolution of partnership based solely upon the representations made by Morgan. He testified that he would not have signed the articles of dissolution had he known that the schedules were incorrect.

Subsequently, about March 29, 1967, the accounting firm of Peat, Marwick & Mitchell, who prepared the final partnership tax return, forwarded such tax return to the two partners. When Arnold received his copy of the return he observed that it reflected the book value of his interest to be $64,488.52 and not the sum of $38,788.71 as had been represented by Morgan. This disclosure led Arnold to institute these proceedings.

Morgan disclaimed any knowledge of any discrepancy between figures shown on the schedules used as a basis for the dissolution of the partnership and the figures revealed by the partnership income tax return, stating that he had nothing to do with the preparation of such schedules and did not even verify the liabilities that he assumed. Morgan further testified that he

at no time checked to see if there was a discrepancy, even after Arnold claimed that there was one, and further said that "he couldn't care less about the Peat, Marwick and Mitchell figures."

Mary Ferguson testified that she was directly supervised by Morgan; that she prepared the schedules in accordance with instructions given her by Morgan; and admitted that all of the partnership expenses were not included in the books as of March 31, 1967. The jury heard expert accounting witnesses testify that the omission of such expenses from the final return overstated the net income of the partnership to the extent of such expenses and this would cause Arnold to report and pay income tax on an overstated income figure.

Several expert accounting witnesses were produced by Morgan who attempted to reconstruct the books and records in accordance with generally accepted accounting principles. The testimony of these witnesses reveals that there was an increase in the partnership's net worth of $5,378.49 and this included an arbitrary reduction of $15,000. A voluminous amount of accounting testimony was produced before the jury and, without detailing such evidence, it is sufficient to state that neither the experts for appellee or appellant found that the statements delivered by Morgan to Arnold as a basis for the sale were correct.

The record reveals that since the partnership was dissolved Morgan has continued to operate the business; that his two sons succeeded to the partnership interest of Arnold; and that Mary Ferguson continues to be an employee of Morgan with a substantial increase in salary, as well as bonus.

## OPINION

In his first point of error appellant Morgan contends that the trial court erred in permitting the introduction into evidence of Plaintiff's Exhibit No. 12. This exhibit appears to be a true copy of the partnership federal income tax return for Arnold & Morgan Piano & Organ Company for the period from January 1, 1967 through March 31, 1967. It was prepared by the accounting firm of Peat, Marwick & Mitchell. A member of that firm testified that they were employed by Arnold & Morgan Piano & Organ Company to prepare the return; that same was prepared from information received from the books and records of the company which was furnished to them.

The record reveals that all of the books and records of the partnership were in the courtroom at all times during the trial and available to both parties.

According to the representative of Peat, Marwick & Mitchell the income tax return so prepared by his firm displayed the figure of $64,488.52 as representing the book value of Mr. Arnold's interest in the partnership.

Mr. Charles Ray, a certified public accountant, who testified as an expert witness on behalf of appellant Morgan, said that he based his figures on a trial balance which tied the books to the tax return prepared by Peat, Marwick & Mitchell.

At the time Exhibit 12 was offered in evidence the following objection was made:

"MR. MUSSINA: Your Honor, we will have to object to it as it is a completely different date; an attempt to impeach and it has no connection and I don't see the relevancy and it is not material to the issues here.

THE COURT: Overrule the objection."

In his brief, under this point of error, appellant now urges that the best evidence as to the books and records of the business is the books and records themselves. He also urges that the instrument was immaterial and irrelevant. We cannot sustain either of these contentions. In the first place, the best evidence rule was not properly invoked by the objection made at

the time of the introduction of the exhibit. The objection concerning "best evidence" comes for the first time on appeal and, therefore, too late. We agree with appellee that even had the "best evidence" objection been properly made in the first instance the exhibit would have been properly admissible because the testimony revealed that the document contained information directly from the books and records and that such books and records were in the courtroom, and available to all parties at all times. It has been frequently held that when excerpts are prepared by expert witnesses and taken from books and records before the court the "best evidence" rule does not apply to such extracts or summaries when the books and records pertinent thereto are produced in court or made available to the opposing party. Peters v. Brookshire, 195 S.W.2d 181 (Tex. Civ.App., Fort Worth 1946, writ ref'd n. r. e.); Spradlin v. Rosebud Feed & Grain Co., 294 S.W.2d 301 (Tex.Civ.App., Waco 1956, no writ).

■ We think Exhibit 12 was certainly material to the issues involved in this litigation inasmuch as the facts contained therein, based upon the books and records of the company, conveyed for the first time to appellee Arnold the facts which revealed the discrepancy between the representation made by Morgan and which led to the eventual closing of the partnership sale. Appellant's first point is overruled.

■ In his next point of error appellant urges reversal because of the trial court's action in permitting testimony with regard to the tax consequences to appellee Arnold by reason of $40,000 of unrecorded expenses which were not reflected upon the books of the company.

During examination of appellee's expert accounting witness who had testified concerning the income tax return for the partnership, it was developed that the financial schedules prepared by Mary Ferguson, and which were submitted to Arnold before the signing of the dissolution agreement, listed certain expenses totaling approximately $40,000. Mary Ferguson testified that such items were not on the books but were owed by the partnership. Appellee's expert witness testified that he had never been advised that the final income tax return of the partnership was incorrect or that it did not contain all of the records of the dissolved partnership. He was asked the effect on the final partnership return if the expenses of $40,000 had not been recorded on the books when the return was prepared and his testimony revealed that the income which appellee would report would be overstated by approximately $20,000.

We believe that in this action which involves fraud, and in which wide latitude is generally indulged in the introduction of evidence, the testimony offered and introduced is not immaterial but is admissible to demonstrate the inaccuracy of the records prepared by Mary Ferguson under the direction of Morgan and which were submitted to Arnold, and relied upon by him. Moreover, it would have a tendency to demonstrate that appellant was placing upon appellee an incorrect share of the partnership income, thereby reducing the income tax liability of appellant, which conduct in itself the jury might conclude had some probative value in demonstrating fraudulent intent. Even if it could be said that the introduction into evidence of this testimony was error appellant has not demonstrated that such error, if any, was of such a nature and character as that it probably resulted in the rendition of an improper verdict. Rule 434, Texas Rules of Civil Procedure.

In his third, fourth, fifth and sixth points of error appellant complains of the court's action in permitting the introduction into evidence of plaintiff's Exhibits 22, 23, 24 and 25. Plaintiff's Exhibits 22 through 25 are large sheets of heavy paper which had been placed on an easel furnished in the courtroom and which was in plain view of the jury and upon which figures were placed by appellee's counsel, during the cross-examination of appellant's expert ac-

counting witnesses. From time to time appellee's counsel, during such cross-examination, would place certain figures taken from books and records in evidence upon the sheets of paper and question the witness concerning such figures. Appellant admits in his brief that the exhibits contained figures used in other exhibits already admitted into evidence but argues that the actual combining of the figures which culminated in demonstrating alleged variations was performed by counsel for appellee and therefore amounted to unsworn testimony. Appellant does not demonstrate that any of the facts and figures written upon the various exhibits were not based upon other instruments already admitted in evidence.

When the various exhibits were offered in evidence the trial court overruled the objection made thereto to the effect that they did not constitute "probative evidence" and gave to the jury the following instruction:

"THE COURT: Overrule the objection. However, the jury will understand that the figures put on the sheet by counsel are of no value except insofar as it is supported by the evidence which is in the record."

■■ We see no error in the action of the court in admitting these various exhibits into evidence. At no time during the trial did appellant object to appellee's use of the easel in plain view of the jury, same being used so that the jury could more easily follow the testimony being elicited on direct and cross examination from the various expert accounting witnesses. The exhibits contained nothing that was not already properly in evidence. The admonition given by the trial court sufficiently limited the jury's consideration of the exhibits. Our courts have held that it is permissible to prepare a summary or statement based upon testimony before the jury and to admit same into evidence. Missouri, Kansas & Texas Ry. Co. of Texas v. Patterson, 164 S.W. 442 (Tex.Civ.App.,

Texarkana 1914); Cochran v. Hamblen, 215 S.W. 374 (Tex.Civ.App., Beaumont 1919); and Fairbanks, Morse & Co. v. Carsey, 109 S.W.2d 985 (Tex.Civ.App., Dallas 1937, writ dism'd).

Appellant's points 7, 8 and 9 are each multifarious in that they combine a "no evidence" and "insufficient evidence" point as to the evidence to sustain the answer of Special Issues 1, 2 and 3. These issues relate to the representation of value made by Morgan; that it was false; and that he knew that it was false when he made it.

■ We have examined these points in obedience to the rules of judicial review as laid down in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952) and, having done so, we overrule appellant's points. In view of the nature of this case in which false and fraudulent representations are alleged to have been made by appellant to appellee in order to induce the purchase of appellee's share in a valuable partnership, we have carefully read the entire statement of facts and given consideration to the exhibits offered and admitted into evidence. Having done so, we are convinced that there was sufficient evidence of probative value to justify the jury in answering the issues in the manner in which they were answered.

As stated above, the law allows a great deal of latitude in the introduction of evidence in cases involving fraud. Fraud may be proved directly or by circumstances. It has been said that fraud is, in its very nature, not discernible by the direct evidence of the senses and is usually so covert or attended with such attempts at concealment as to be incapable of proof other than by circumstantial evidence. As stated in 26 Tex.Jur.2d, Fraud and Deceit, § 119, at page 90:

"Its existence, in a given case, may be proved either by intrinsic evidence of unfairness in the transaction itself, or by evidence of facts and circumstances attending the transaction that, by the ordinary tests by which people judge of the

motives to action, appear inconsistent with an honest purpose."

The testimony adduced is voluminous and detailed. Many, many witnesses testified and their testimony was subjected to detailed cross-examination. Arnold testified that Morgan represented to him that his interest in the partnership was worth the sum stated. He also said that Morgan represented that the sum stated was evidenced by books and records of the company. He trusted Morgan and relied upon his statement as being true. Arnold produced evidence to demonstrate that such representation was not true. Morgan produced testimony to refute these contentions. The jury saw and observed the witnesses, their demeanor and conduct on the witness stand, and fulfilled their duty as jurors by giving weight thereto. We cannot agree with appellant that the answers of the jury to these material issues were contrary to the preponderance of the evidence. Appellant's points are therefore overruled.

By his tenth point of error appellant asserts that the jury's answer to Special Issue No. 8 "was contrary, unsupported by, and in fact contrary, to all of the evidence before the Court."

Special Issue No. 8, being in a form agreed to by the parties, asked the jury to determine the actual value of one-half interest in the net partnership assets as shown by the books and records of the partnership on March 21, 1967. The jury responded "$51,447.96".

The appellant argues under this point that the only evidence as to the value of one-half of the partnership interest was $41,447.96 which, he contends, is derived by taking one-half of the sum of $82,955.93 claimed to be the net worth of the partnership as evidenced by Defendant's Exhibit 3. We cannot agree with appellant's contention. Defendant's Exhibit 3 is an accounting prepared by appellant's accounting expert witness and the jury was not bound to accept any or all of the figures as revealed therein. Moreover, as demon-

strated by cross-examination of appellant's expert accountant who prepared the exhibit, there were two questionable items which were not considered by the accountant but were considered by other expert witnesses in arriving at the net worth of the partnership assets. These two items, both revealed in Defendant's Exhibit 3, are: (1) arbitrary adjustment of $15,000, and (2) the down payment on the building of $4,940. The jury obviously considered these two items in arriving at their answer to the special issue for, when they are considered in connection with the remaining figures on Exhibit 3, one-half of the net partnership assets comes to a total of $51,447.96, being the exact figure chosen by the jury. There is evidence to support the inclusion of the two questioned items in the computation of the net worth. This evidence, coupled with the expert testimony of the accounting firm of Peat, Marwick & Mitchell to the effect that the book value of Arnold's interest was $64,488.52, provided ample probative evidence to support the jury's answer to this special issue.

In his eleventh, and final, point of error appellant contends that "The verdict of the Jury in response to Special Issue No. 9 was wholly unsupported by any evidence and was clearly erroneous."

Special Issue No. 9, which was submitted to the jury conditioned upon an affirmative answer to Special Issue No. 3 which inquired concerning the false representation made by Morgan, asked the jury to determine the amount of money, if any, that Morgan should pay Arnold as exemplary damages. The court instructed the jury that by the term "exemplary damages" was meant an amount which they may, in their discretion, award in addition to actual damages, if any, by way of punishment of V. E. Morgan for making false representations, if they were made, as an example to others. The jury was also instructed that such exemplary damages should not include any amount otherwise found by them as actual damages but might include compensation for inconven-

ience, attorney's fees, cost of litigation and other expenses unrecoverable as actual damages.

Appellant offered no objection to the submission of the issue nor the definition accompanying same. The jury answered the issue "$25,000.00". Appellant makes no contention either in his point of error or in his argument thereunder that the answer of the jury is excessive, contenting himself solely with the argument that there is no evidence whatsoever to justify the jury's answer.

 It is well settled in Texas jurisprudence, as well as generally, that fraud is one of the grounds for an award of exemplary damages. 25 C.J.S. Damages § 123(9), p. 1151; 37 C.J.S. Fraud § 144, p. 489; 26 Tex.Jur.2d, Fraud and Deceit, § 136, pp. 121–122; Connor v. Sewell, 90 Tex. 275, 38 S.W. 35 (1896). In essence it is the purpose or intention of the defendant which is determinative of his liability for exemplary damages. Jacobs, Bernheim & Co. v. Crum, 62 Tex. 401 (1884). Aggravating circumstances may authorize such exemplary damages as, in the jury's opinion, the defendant's conduct justifies. Graham v. Roder, 5 Tex. 141 (1849); 26 Tex.Jur.2d § 136, p. 121.

"It has been said that as a prerequisite to the recovery of exemplary damages, it must appear that the representations forming the basis of the fraud action were false, that they were willfully made with full knowledge that they were false and with intent to injure the other party, and that the other party was injured as a result of the representations." 26 Tex.Jur.2d, Fraud and Deceit, § 136, p. 122.

Evidence of willfulness on the part of the defendant may be implied from actual wrongful acts and conduct of the defendant. Jim Sanders Ford Co. v. Ontiveros, 389 S.W.2d 614 (Tex.Civ.App., Waco 1965).

 The jury had before them and considered all of the facts, both direct and circumstantial, dealing with the question of falsity of the representation concerning the value of the partnership interest and the reason and motive possessed by Morgan in making such false representation. We conclude from our review of the evidence that it cannot be said, as contended by appellant, that there is no evidence to support the answer of the jury to Special Issue No. 9, nor can we say that the answer of the jury thereto is clearly erroneous.

 It must be borne in mind that we are not here dealing with an arm's length transaction between strangers but, on the contrary, we are confronted with the relationship between partners who had fiduciary relationship with each other. Our Supreme Court in Johnson v. Peckham, 132 Tex. 148, 120 S.W.2d 786, 120 A.L.R. 720 (1938), said that partners have a fiduciary relationship and that when persons enter into a partnership, "each consents, as a matter of law, to have his conduct towards the other measured by the standards of the finer loyalties exacted by courts of equity." It has been held that failure to inform a co-owner of material facts breaches the fiduciary duty between partners and that such omission results in a "legal fraud". Perpetual Royalty Syndicate v. Albritton, 149 S.W.2d 700 (Tex.Civ.App., Fort Worth 1941, writ dism'd, correct jdgmt). A partner purchasing another partner's interest in the partnership owes to such partner "the highest duty of honesty and fair dealing in making the trade * * *." Inman v. Parr, 311 S.W.2d 658 (Tex.Civ.App., Beaumont 1958, writ ref'd n. r. e.); Cartwright v. Minton, 318 S.W.2d 449 (Tex. Civ.App., Eastland 1958).

 Exemplary damages, by their very nature are unliquidated and the amount to be awarded rests largely in the discretion of the jury. Unless the award is so large as to indicate that it is the result of passion, prejudice or corruption, or that evidence has been disregarded, the

verdict of the jury is conclusive and will not be set aside as excessive, either by the trial court or on appeal. Skillern & Sons, Inc. v. Stewart, 379 S.W.2d 687 (Tex.Civ. App., Fort Worth 1964). It is true that exemplary damages must bear a reasonable relationship to the amount of actual damages. In this case the ratio of exemplary damages to actual damages was less than two to one. The amount of the damages awarded, left to the discretion of the jury, is not out of proportion. The ratio of one to four has been upheld several times. 17 Tex.Jur.2d, § 187, p. 256; Burke v. Bean, 363 S.W.2d 366 (Tex.Civ.App., Beaumont 1962). Appellant's eleventh point of error is overruled.

Having considered all of appellant's points of error and finding no reversible error reflected therein, the judgment of the trial court is affirmed.